**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **IN RE:  ENFORCEMENT OF PHILIPPINE** ) | **Misc. No. 19-412 (LAK)** |
| **FORFEITURE JUDGMENT AGAINST ALL** ) | |
| **ASSETS OF ARELMA, S.A., FORMERLY** ) | |
| **HELD AT MERRILL LYNCH, PIERCE,** ) | |
| **FENNER & SMITH, INCORPORATED,** ) | |
| **INCLUDING, BUT  NOT LIMITED TO,** ) | |
| **ACCOUNT NUMBER 165-07312, AND ALL** ) | |
| **INTEREST, INCOME OR BENEFITS** ) | |
| **ACCRUING OR TRACEABLE THERETO** ) | |
| ) | |

**MEMORANDUM OF INTERVENOR/RESPONDENT JOSE DURAN**
**IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Dated:   September 18, 2019
New York, New York

Robert A. Swift
(Admitted *pro hac vice*)
Kohn, Swift & Graf, P.C.
1600 Market Street, 25th Floor
Philadelphia, PA 19103
(215) 238-1700
rswift@kohnswift.com

Jeff Glen
Anderson Kill, P.C.
1251 Avenue of the Americas
New York, NY 10020
(212) 278-1009
jglen@andersonkill.com

*Attorneys for Intervening Respondent*
*Jose Duran and the Class of Filipino*
*Judgment Creditors Certified in MDL*
*No. 840*

**TABLE OF CONTENTS**

I. THE FACTS ........................................................................................................... 1

    A.    The Class' Judgments .............................................................................. 1

    B.    The Arelma Assets Litigation ................................................................. 2

    C.    The Republic's Claim to the Arelma Assets .......................................... 4

    D.    The United States' Application Pursuant to 28 U.S.C. § 2467 ............................... 5

II. STANDARD OF REVIEW ................................................................................. 6

III. ARGUMENT ........................................................................................................ 6

    A.    This § 2467 Proceeding Is Subject to the Statute of Limitations in § 2462............ 6

        1.    This is an "Enforcement" Proceeding........................................................ 7

        2.    The Philippine Supreme Court Ruled that this is a Civil Forfeiture........... 8

        3.    The Arelma Assets Have Been in the United States Since 1972............... 8

        4.    More Than Five Years Have Passed Since "the Claim First Accrued"...... 9

    B.    The Attorney General's Decision to File the Application Did Not  Create a New Claim for Purposes of § 2462 ............................................................. 13

    C.    The 2009 Sandiganbayan Judgment Was a "Final Judgment" ............................ 14

IV. CONCLUSION .................................................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*3M Co. v. Browner*,
17 F.3d 1453 (D.C. Cir. 1994) ........................................................................ passim

*Adams v. Woods*,
6 U.S. (2 Cranch) 336 (1805) ................................................................................6

*Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal., Inc.*,
522 U.S. 192 (1997) ............................................................................................10

*Cunningham v. Hamilton Cty., Ohio*,
527 U.S. 198, 119 S. Ct. 1915, 144 L. Ed. 2d 184 (1999) ....................................15

*Edrisse v. Marriott Int'l, Inc.*,
757 F. Supp. 2d 381 (S.D.N.Y. 2010) ......................................................................6

*Gabelli v. SEC*,
133 S.Ct. 1216 (2013) .................................................................................... passim

*Heimeshoff v. Hartford Life & Accident Ins. Co.*,
134 S.Ct. 604 (2013) ............................................................................................12

*Hilao v. Estate of Ferdinand Marcos*,
25 F.3d 1467 (9th Cir. 1994) ..................................................................................2

*Hilao v. Estate of Marcos*,
103 F.3d 762 (9th Cir. 1996) ..................................................................................2

*Hilao v. Estate of Marcos*,
103 F.3d 767 (9th Cir. 1996) ...............................................................................1, 2

*Hilao v. Estate of Marcos*,
2012 WL 5351264 (9th Cir. 2012) ..........................................................................2

*In re Estate of Ferdinand E. Marcos Human Rights Litigation*,
910 F.Supp. 1460 (D.HI 1995) ................................................................................1

*In re Restraint of Twenty Real Properties in California and Florida Owned or Controlled by Fabrice Touil or Richard Touil*,
No. 16-MC-1612 (CKK), 2019 WL 481167 (D.D.C. Feb. 6, 2019) ......................14

*Kokesh v. SEC*,
137 S.Ct. 1635 (2017) ..........................................................................................10

ii

*Merck & Co., Inc. v. Reynolds,*
130 S. Ct. 1784 (2010)..................................................................................................12

*Merrill Lynch v. Arelma,*
2004 WL 5326929 .....................................................................................................3, 4

*Merrill Lynch v. ENC Corporation,*
464 F.3d 885 (9th Cir. 2006) ..........................................................................................3

*Petrello v. White,*
533 F.3d 110 (2d Cir. 2008)..........................................................................................15

*PHH Corp. v. Consumer Fin. Prot. Bureau,*
839 F.3d 1 (D.C. Cir. 2016) ..........................................................................................11

*Pimentel v. Republic of the Philippines,*
553 U.S. 851 (2008)............................................................................................. passim

*Railroad Telegraphers v. Railway Express Agency, Inc.,*
321 U.S. 342 (1944)......................................................................................................11

*Republic of the Philippines v. Marcos,*
806 F.2d 344 (2nd Cir. 1986)...................................................................................2, 12

*Republic of the Philippines v. Marcos,*
862 F.2d 1355 (9th Cir. 1988) ........................................................................................2

*SEC v. Bartek,*
484 F.App'x 949 (5th Cir. 2012) ..................................................................................12

*Singleton v. Clash,*
951 F.Supp.2d 578 (S.D.N.Y.2013).............................................................................12

*State of Wisconsin v. Pelican Ins. Co. of New Orleans,*
127 U.S. 265 (1888).......................................................................................................8

*Swede v. Rochester Carpenters Pension Fund,*
467 F.3d 216 (2d Cir. 2006)..........................................................................................15

*Teachers Ins. & Annuity Ass'n of Am. v. CRIIMI MAE Servs. Ltd. P'ship,*
763 F. Supp. 2d 665 (S.D.N.Y. 2011), aff'd, 481 F. App'x 686 (2d Cir. 2012)........................6

*TRW Inc. v. Andrews,*
534 U.S. 19 (2001)........................................................................................................12

*United States v. The Federative Republic of Brazil,*
748 F.3d 86 (2d Cir. 2014)..............................................................................................8

iii

*Wallace v. Kato*,
    549 U.S. 384 (2007).............................................................................................................10

**STATE CASES**

*Swezey v. Merrill Lynch*,
    No. 155600 (Sup. Ct. N.Y.).............................................................................................13

**FEDERAL STATUTES**

15 U.S.C. § 80b-6(1), (2).......................................................................................................10

28 U.S.C. § 1350.......................................................................................................................1

28 U.S.C. § 2462.............................................................................................................passim

28 U.S.C. § 2467.............................................................................................................passim

42 U.S.C. § 1983....................................................................................................................10

**FEDERAL RULES**

Federal Rules of Civil Procedure:

    Rule 19(b)..........................................................................................................................3

    Rule 54.............................................................................................................................14

    Rule 56...............................................................................................................................1

    Rule 58.............................................................................................................................14

    Rule 69(a)..........................................................................................................................8

Intervenor/Respondent Jose Duran and the Class of 9,539 Filipino human rights victims ("Duran") have moved this Court pursuant to Federal Rule of Civil Procedure 56 to dismiss the Application of the United States Department of Justice to recognize and enforce the forfeiture judgment of the Republic of the Philippines pursuant to the five-year statute of limitations in 28 U.S.C. § 2462.

## I.     THE FACTS

### A.     The Class' Judgments

Intervenor Duran is a member and class representative of a Class certified by the United States District Court for the District of Hawaii.  Opinion of July 15, 2019, ECF # 30 at 1.  He is a victim of torture perpetrated by the Philippine military under its commander-in-chief during martial law, Ferdinand E. Marcos.  The other 9,538 members of the Class (or heirs) are Filipinos who were systemically tortured, summarily executed or disappeared between 1972 and 1986. The horrific tortures they suffered are described in *In re Estate of Ferdinand E. Marcos Human Rights Litigation*, 910 F.Supp. 1460 (D.HI 1995), aff'd *sub nom. Hilao v. Estate of Marcos*, 103 F.3d 767 (9th Cir. 1996).

The Republic of the Philippines, the perpetrator of the abuses, could not be sued in the United States because it possessed sovereign immunity.  But Ferdinand E. Marcos, the president from 1965 to 1986, could be sued by the Class after he fled the Philippines following the "People Power" revolution, and took residency in the United States.  The Class sued Marcos in federal court in Hawaii in 1986 under the Alien Tort Claims Act, 28 U.S.C. § 1350, for directing and orchestrating the abuses.  Marcos died in 1989 and his wife and son were substituted as representatives of his Estate. After nine years of contentious litigation and a trifurcated jury trial in federal court spanning two and one-half years, the Class obtained a judgment against the

Estate of Ferdinand E. Marcos for almost $2 billion. *Hilao v. Estate of Marcos, supra*., 103 F.3d at 772. The judgment proved exceedingly difficult to collect because the Marcos family had a highly developed and sophisticated pattern and practice of concealing and secreting their assets, which continued even after entry of judgment. *See Hilao v. Estate of Ferdinand Marcos*, 25 F.3d 1467, 1480 (9th Cir. 1994); *Republic of the Philippines v. Marcos*, 862 F.2d 1355 (9th Cir. 1988); and *Republic of the Philippines v. Marcos*, 806 F.2d 344 (2nd Cir. 1986). In 1995, the Marcos Estate and its representatives, Imelda Marcos and Ferdinand R. Marcos, were held in contempt of court and assessed compensatory damages of $100,000 per day until they purged their contempt. *Hilao v. Estate of Marcos*, 103 F.3d 762, 765-67 (9th Cir. 1996) (affirming contempt citation and compensatory damage amount). They failed to purge their contempt. In January 2011, the federal court entered a (second) judgment for the Class against the Estate, Imelda Marcos and Ferdinand R. Marcos for accumulated compensatory damages totaling $353.6 million. The judgment was affirmed on appeal. *Hilao v. Estate of Marcos*, 2012 WL 5351264 (9th Cir. 2012). The Class's two judgments have been registered in New York. *See* ECF # 5-6 .

   **B.     The Arelma Assets Litigation**

Jose Campos was a Filipino and principal owner of the largest distributor of ethical drugs in the Philippines, United Laboratories, Inc. He was a friend and confidant of the President, Ferdinand E. Marcos. *See* Swift Declaration, Exhibit 1. In the 1970's, Campos owned and controlled properties for Marcos. *Id*. In August 1972, Campos directed a Swiss banker to create a corporation under Panamanian law known as Arelma S.A. ("Arelma") for Marcos. *Id*., Exhibit 2. Campos then directed the banker to open an investment account for Arelma at Merrill Lynch in New York City in 1972. *Id*., Exhibit 3. The account was funded with $2 million of money from Campos held in a Swiss bank account. *Pimentel v. Republic of the Philippines*, 553 U.S.

851, 857-58 (2008) ("Pimentel").  This was the sole deposit into the Arelma account.  The account was frozen at Merrill Lynch in 1987 by order of a New York court, but the freeze was lifted when the Republic dismissed the New York litigation.  *Id*., Exhibit 4.  That deposit has grown to roughly $41 million today.  Application, ¶ 1.

As a result of multiple claims to the Arelma account, Merrill Lynch filed a statutory interpleader action in September 2000 in the United States District Court for the District of Hawaii which named the Class, Arelma and the Republic as parties.  *Pimentel* at 859.  Merrill Lynch deposited the Arelma Assets into the District Court.  Philippine National Bank ("PNB") was impleaded into the action.  The Republic was dismissed in 2001 based on its assertion of sovereign immunity.  The Republic moved to dismiss the entire interpleader on the basis that it was an indispensable party under FRCP 19(b).  This motion was denied by the District Court and the dismissal was later affirmed by the Ninth Circuit.  Discovery ensued with PNB claiming the funds on behalf of the Republic.  At trial in 2004, the Class prevailed and was awarded the Arelma account at Merrill Lynch. *Merrill Lynch v. Arelma*, 2004 WL 5326929 (D.HI) The Court found, *inter alia*, based on the evidence, that Arelma was an *alter ego* of Ferdinand Marcos and that Marcos had a possessory interest in the Assets.  *Id*.  In July 2004, the Arelma Assets were then deposited in the Class Settlement Fund held by the District Court pending appeal.  Swift Declaration, Exhibit 5.  The Ninth Circuit affirmed the findings and conclusions of the District Court.  *Merrill Lynch v. ENC Corporation*, 464 F.3d 885 (9th Cir. 2006). On *certiorari* to the United States Supreme Court, that Court reversed and directed dismissal of the case because the Republic was deemed a required party under FRCP 19(b) and the Federal Interpleader Act.  *Republic of the Philippines v. Pimentel*, 553 U.S. 851 (2008).

C.      The Republic's Claim to the Arelma Assets

Marcos fled the Philippines in February 1986 and lived in the United States until his death in 1989.  Application, ¶ 6.  The Republic has been aware of the Arelma account at Merrill Lynch since 1986 when the Republic sued Marcos and obtained an injunction against Merrill Lynch in 1987 which froze the Arelma Assets.  *See* Swift Declaration, Exhibit 4.  But the Republic failed to pursue the litigation, presumably for lack of proof that the Arelma Assets were the product of illegal conduct by Marcos.[1]   In 1997-98 and again in 2000, the Republic demanded that Merrill Lynch turn over to the Republic the Arelma Assets and threatened litigation.  Swift Declaration, Exhibit 6.

In December 1991, the Republic filed a forfeiture case in a Philippine court (the Sandiganbayan) under R.A. 1379 against the Marcos Estate with regard to the Swiss Bank accounts of the Marcoses.  Application, ¶ 10.  No claim was made as to the Arelma funds at Merrill Lynch.  The Republic prevailed in 2003 and was awarded approximately $680 million from Marcos assets frozen by the Swiss courts.  The Philippine Supreme Court's July 15, 2003 ruling was, by its own declaration, "final and executory." However, in July 2004, a week after the Hawaii federal court ruling in favor of the Class, the Republic filed a summary judgment motion seeking the Arelma Assets as part of the 1991 forfeiture action (*Pimentel* at 860) and asserted the 2003 decision was not final.  *Id*.  The Republic never gave notice to or joined the Class or Merrill Lynch in the Arelma Assets proceeding (or the 1991 forfeiture case) even though the Class was the adjudicated owner of the Arelma Assets and entitled to possession of them.  *Merrill Lynch v. Arelma, supra*.; Swift Declaration, Exhibit 5.  Showing a callous

---

[1]   The Republic lacks proof the $2 million (in 1972) ever belonged to the Republic, and has submitted no document to any court supporting its ownership claim.  This lack of evidence has never stopped the Republic's counsel, and now the Department of Justice, from falsely asserting the Arelma funds are "stolen assets."

disregard of comity to the Hawaii federal court which had already adjudicated entitlement to the Arelma Assets, the Republic asserted *in rem* jurisdiction over the Arelma Assets that were on deposit in the Class Settlement Fund with the Clerk of the Federal Court in Hawaii.  ECF # 1, Att. A, Ex. 1 (Sandiganbayan Opinion) at 40.

In April 2009, the Sandiganbayan ruled in favor of the Republic.  *Id*.  It did <u>not</u> rule that the Arelma funds were stolen from the Republic because the Republic presented no evidence that the origin of the assets was property of the Republic.  Rather, it ruled that based on a calculation of Marcos' assets in 1986, less his declared assets in 1965 and earnings in the interim, his 1986 assets were "unexplained wealth" that should be forfeited to the Republic.  *Id*. at 45-46.  Absent a ruling that the property originally belonged to the Republic, the property could not be deemed forfeited *ab initio,* nor did the court so rule.  Judgment was entered under R.A. 1379 for "an estimated amount of USD 3,369,975 as of 1983, plus all interests and all other income that accrued thereon, until the time or specific day that all money or monies are released and/or transferred to the possession of the Republic."  *Id*. at 80-81.

On direct appeal to the Philippine Supreme Court, that Court affirmed the judgment on April 25, 2012. Application, ¶ 1.  Notably, that Court ruled that "forfeiture suits under R.A. 1379 are civil in nature." Att. A, Ex. 2 at 10.  A motion for reconsideration was "DENIED with FINALITY" on March 12, 2014.  (emphasis in original). Application, ¶ 12.

### D.     The United States' Application Pursuant to 28 U.S.C. § 2467

The Attorney General, opting to represent the perpetrator of massive human rights abuses, filed his § 2467 Application to recognize and enforce the 2009 Sandiganbayan judgment on June 27, 2016.  (ECF # 1)

## II.     STANDARD OF REVsIEW

In *Teachers Ins. & Annuity Ass'n of Am. v. CRIIMI MAE Servs. Ltd. P'ship*, 763 F. Supp. 2d 665, 668 (S.D.N.Y. 2011), aff'd, 481 F. App'x 686 (2d Cir. 2012), this Court stated the standard of review applicable to a motion for summary judgment:

> Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Where the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim. In that event, the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment.

(footnotes omitted).  *See also Edrisse v. Marriott Int'l, Inc.*, 757 F. Supp. 2d 381, 386 (S.D.N.Y. 2010).

## III.     ARGUMENT

### A.     This § 2467 Proceeding Is Subject to the Statute of Limitations in § 2462

Since the founding of the United States, Congress has placed limits on how long the government has to bring proceedings seeking to enforce civil penalties or forfeitures.  *See Adams v. Woods*, 6 U.S. (2 Cranch) 336 (1805).  In *Adams* at page 341, Chief Justice Marshall stated:

> In a country where not even treason can be prosecuted, after a lapse of three years, it could scarcely be supposed, that an individual would remain for ever liable to a pecuniary forfeiture."

The predecessor to Section 2462 was enacted in 1839.  It was codified at 28 U.S.C. § 2467 in 1948.   Only its phraseology has been modified in the intervening years.  *Gabelli v. SEC*, 133 S.Ct. 1216, 1219 (2013); *3M Co. v. Browner*, 17 F.3d 1453, 1458-1462 (D.C. Cir. 1994).  Section 2462 of Title 28 currently states:

> Except as otherwise provided by Act of Congress, an action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise, shall not be entertained unless commenced within five years from the date when the claim first accrued if, within the same period, the offender or the

property is found within the United States in order that proper service may be made thereon.

Section 2462 has been construed in many published opinions and applies ubiquitously to all proceedings seeking enforcement of any civil fine, penalty or forfeiture. *See Gabelli, supra.; 3M Co. v. Browner, supra.* (applying Section 2462 to administrative proceedings seeking civil penalties).

Section 2467 was enacted in 2000 and codified with Section 2462 in Chapter 163 of Title 28 under the heading "Fines, Penalties and Forfeitures."   Section 2467(c)(1) permits the Attorney General to initiate a proceeding to "enforce a foreign forfeiture."  Because the language of Section 2467 closely parallels the wording of Section 2462, and Section 2462 is the only statute of limitations pertinent to civil forfeitures, a Section 2467 proceeding is subject to Section 2462's five-year limitations period.  It is especially pertinent to this case since the Arelma Assets have been in the United States since 1972 and therefore satisfy a proviso of Section 2462.

This case is a "proceeding" within the meaning of Section 2462.  The term "proceeding" appears in Section (c)(1) of Section 2467: "In a proceeding filed under paragraph 1 -" even though the formal document filed with the Court is denominated an "Application."

Intervenor will now explain how this case fits the criteria of Section 2462.

## 1.      This is an "Enforcement" Proceeding

The United States has no forfeiture judgment against Marcos, only the Republic does.  By virtue of this proceeding, the United States is seeking to recognize and enforce the Republic's foreign judgment.[2]  Section 2467(b)(1) begins: "A foreign nation seeking to have a forfeiture or confiscation judgment registered and enforced by a district court of the United States under this

---

[2]   *See* Opinion of July 15, 2019 at 14 (ECF # 35): "Indeed, as the Government notes, it is not a 'plaintiff,' vindicating its own rights.  Rather, it is an 'applicant,' complying with its duty to enforce rights claimed by others."

section ….."  But for this statute, a foreign forfeiture judgment would not be enforceable in federal court.  The statute requires the United States to be the moving party.  *See The Antelope*, 10 Wheat. 66, 123 (1825); *State of Wisconsin v. Pelican Ins. Co. of New Orleans*, 127 U.S. 265, 290 (1888); *United States v. The Federative Republic of Brazil*, 748 F.3d 86, 91-92 (2d Cir. 2014).  Section 2467(c)(1) permits the United States to seek to "enforce the foreign forfeiture." If the United States satisfies the requirements of Section 2467, it obtains a money judgment for the Republic.  "Process to enforce a judgment under this section shall be in accordance with rule 69(a) of the Federal Rules of Civil Procedure."  28 U.S.C. § 2467(d)(2).

Accordingly, this is a proceeding to enforce a judgment.

### 2.    The Philippine Supreme Court Ruled that this is a Civil Forfeiture

The 2009 Sandiganbayan forfeiture judgment was entered in a case denominated "Civil Action No. 0141."  The judgment in favor of the Republic was on a motion for partial summary judgment. Application, Att. A, Ex. 1.  In affirming the judgment, the Philippine Supreme Court specifically stated that the proceeding was civil in nature.  *Id*., Ex. 2 at pp. 8-10.  This was both a factual and legal conclusion.  Section 2467(e) provides "the court shall be bound by the findings of fact to the extent that they are stated in the foreign forfeiture or confiscation judgment."

### 3.    The Arelma Assets Have Been in the United States Since 1972

Campos deposited $2 million into the Arelma account at Merrill Lynch in New York in November 1972, and the money has remained in the United States ever since.  Between 1972 and 2000, the Arelma Assets were in New York.  Between 2000 and 2009, the Arelma assets were in the Federal Court in Hawaii for a statutory interpleader. Thereafter the Arelma assets were returned to Merrill Lynch in New York and presently reside with the New York State

Comptroller per Order of the New York Supreme Court.  *See* Opinion of July 15, 2019 at 11-12 (ECF #30).

### 4.    More Than Five Years Have Passed Since "the Claim First Accrued"

As regards the Arelma Assets, the claim of unexplained wealth accrued no later than November 1972 when the $2 million was deposited into a Marcos controlled account at Merrill Lynch.  *Pimentel* at 857.  Marcos left the presidency and fled the Philippines in February 1986. *Id.* at 858.  In 1987, the Republic sued the Marcoses and obtained an injunction freezing the Arelma Assets.  In December 1991, the Republic later filed a forfeiture case in the Philippines as to Marcos' unexplained wealth discovered and frozen in Swiss banks.  The forfeiture case did not seek any relief as regards the Arelma Assets.  In letters sent between 1997-98 and 2000, the Republic demanded return of the Arelma Assets from Merrill Lynch.  Swift Declaration, Exhibit 6; *Pimentel* at 859.  Merrill Lynch filed an interpleader case in Hawaii federal court in September 2000 naming the Class and the Republic as defendants and deposited the Arelma Assets into the Court. *Id*. The Republic refused to participate in the interpleader litigation and asserted its sovereign immunity. *Id.* The Republic filed a motion for forfeiture of the Arelma monies in the Sandiganbayan in July 2004 (*Id.* at 860), and received a judgment in April 2009. Application, ¶ 1.

The United States Supreme Court addressed when a claim accrues under Section 2462 in *Gabelli v. SEC., supra*.  Chief Justice Roberts, writing for a unanimous Court, stated that the "most natural reading of the statute" is that "a claim based on fraud accrues – and the five-year clock begins to tick – when a defendant's allegedly fraudulent conduct occurs."  *Id*. at 1220.  *See also 3M Co. v. Browner, supra*. at 1460 ("the term 'accrued' in § 2462 has been taken to mean that the running of the limitations period in penalty actions is measured from the date of the

violation.").  The Chief Justice explained that this "rule has governed since the 1830's."  *Id.* at 1221; *see also 3M Co. v. Browner, supra*. at 1462 ("The meaning of this portion of § 2462 has been settled for more than a century.")  Citing earlier decisions of the Supreme Court, he stated that statutes of limitation like Section 2462 provide "security and stability to human affairs" and "are vital to the welfare of society."  *Id.*

In *Gabelli*, the Court addressed how to interpret the word "accrued" under a general statute of limitations.  The Court did not limit its holding to government enforcement actions or securities fraud. It is significant that the *Gabelli* analysis relied not only on securities law, but also upon decisions reviewing federal tort law under 42 U.S.C. § 1983 and pension plan liability under ERISA. *See Gabelli*, 133 S.Ct. at 1220 (citing *Wallace v. Kato*, 549 U.S. 384, 388 (2007), and *Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal., Inc*., 522 U.S. 192, 195–96 (1997)).  *Gabelli* also cited legal dictionaries defining "accrues" as when a claim comes into existence and can be enforced. *Id*. at 1221 (citations omitted).  *Gabelli* was unanimously reaffirmed by the Court in *Kokesh v. SEC*, 137 S.Ct. 1635, 1639-41 (2017) which extended *Gabelli's* holding on accrual to disgorgement claims.

The *Gabelli* Court was unequivocal in addressing the five-year limitation period for the Section 2462. "[T]he most natural reading" of that language, the Court held, is that "the five-year clock begins to tick … when a defendant's allegedly fraudulent conduct occurs," not when it is discovered. *Gabelli*, 568 U.S. at 448. That interpretation, the Court explained, comports with "the 'standard rule' … that a claim accrues 'when the plaintiff has a complete and present cause of action.' " *Id*. (quoting *Wallace v. Kato*, 549 U.S. 384, 388 (2007)).

The Court reached that result even though the Government sought civil penalties for violating an anti-fraud statute. *See id*. at 445; 15 U.S.C. § 80b-6(1), (2) (making it unlawful for

an investment advisor "to employ any device, scheme, or artifice to defraud any client or prospective client" or "to engage in any transaction, practice, or course of business which operates as a fraud or deceit upon any client or prospective client"). The Court noted a traditional " 'exception' to the standard rule" by which the limitations period for a fraud statute presumptively begins to run at the time of discovery. *Gabelli*, 568 U.S. at 449. But the Court declined to apply that presumption "to graft a discovery rule onto the statute of limitations" in the civil-penalties statute. *Id*. at 454.

It is no defense to the bar of the five-year statute of limitations that the Republic dithered in pursuing the Arelma Assets, and its courts dithered in rendering a forfeiture judgment. The statute began to run when the violation occurred in 1972. While there is no evidence the $2 million was ever the property of the Republic, any fraud, theft or misappropriation thereof must have occurred prior to the deposit in Arelma's account at Merrill Lynch. The Office of the Solicitor General of the United States represented at oral argument to the United States Supreme Court in *Republic v. Pimentel* that the wrongdoing by Marcos over the Arelma assets occurred in 1972. Application, Att. A, Ex. 1 at 41. The Republic chose not to join an interpleader action over the Arelma monies in 2001, and not to join a New York state court turnover proceeding as to the monies in 2009. It is not incumbent on the United States courts to revive foreign "claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared." *Id*. at 1221 citing *Railroad Telegraphers v. Railway Express Agency, Inc*., 321 U.S. 342, 348-49 (1944); *PHH Corp. v. Consumer Fin. Prot. Bureau*, 839 F.3d 1, 50 (D.C. Cir. 2016) (same).

Section 2462 does not provide for any exception to its five-year limitation period. It would be an anomalous result – and never intended by Congress – if enforcement of civil

forfeitures occurring in the United States had to be brought within five years from the wrongdoing but could be brought 10, 50 or 100 years after wrongdoing in a foreign country. The United States has never adopted a discovery rule generally applicable to statutes of limitations. *TRW Inc. v. Andrews*, 534 U.S. 19, 27 (2001) (reversing application of the discovery rule for a claim brought under the Fair Credit Reporting Act). Courts have uniformly rejected applicability of a discovery rule to Section 2462. *3M Co. v. Browner, supra.* at 1461-63*; SEC v. Bartek,* 484 F.App'x 949, 953 (5th Cir. 2012). Even if a discovery rule were applicable, which it should not be, the claim accrued no later than February 1986 when Marcos fled the Philippines and the Republic learned of the Arelma account.

In February 1986, the Republic created an agency known as the Presidential Commission on Good Government, for the express purpose of recovering Marcos' assets. *Pimentel* at 858. More than thirty years later, that agency continues in existence with 125 staff members which have initiated dozens of cases against the Marcoses. *See* www.pcgg.gov.ph By February 1986, the Republic had a "complete and present cause of action," *Singleton v. Clash*, 951 F.Supp.2d 578, 585 (S.D.N.Y.2013) (quoting *Gabelli v. SEC*). Once aware of a cause of action, a party must act with reasonable diligence. *See Merck & Co., Inc. v. Reynolds,* 130 S. Ct. 1784 (2010). A claim accrues as soon as "the plaintiff can file suit and obtain relief." *Heimeshoff v. Hartford Life & Accident Ins. Co.*, 134 S.Ct. 604, 610 (2013) (internal quotation marks omitted). In fact, the Republic did file suit over the Arelma assets in 1987. The Republic sought and received an injunction from a New York court enjoining transfer of the Arelma account in 1987. Consistent with the express language of Section 2462, the Marcoses were residing in the United States at that time, subject to service of process, and were actually served with process by the Republic in *Republic of the Philippines v. Ferdinand E. Marcos*, 806 F.2d 344 (2d Cir. 1986). Moreover, the

Arelma Assets have been in the United States since 1972.  Therefore, the Republic's claim accrued more than 3 decades ago.

### B.    The Attorney General's Decision to File the Application Did Not Create a New Claim for Purposes of § 2462

In prior briefing[3] on the statute of limitations it was contended that the discretionary decision of the Attorney General to file a proceeding under Section 2467 somehow establishes a "new claim" from which the time to file suit should start to run.

This argument makes no sense.  First, there is no "claim" separate and apart from the foreign forfeiture claim.  A Section 2467 proceeding is, by its express terms, an "enforcement" proceeding.  *See* § 2467(c)(1).  In an enforcement proceeding, the "claim" is the identical claim asserted in the foreign forfeiture action.  This is made clear by Section 2467(e) which provides that a United States court is bound by the findings of fact of the foreign forfeiture judgment.  The US Attorney General possesses no independent "claim" to the funds.  Indeed, it is the law of the case that the United States "is not a 'plaintiff,' vindicating its own rights.  Rather, it is an 'applicant,' complying with its duty to enforce rights claimed by others."  Opinion July 15, 2019 (ECF # 30).

If Section 2467 applications did create new "claims," then such claims are, in effect, not subject to any statute of limitations.   This is because Section 2462 would not run until the Attorney General exercises his discretion (*see* § 2467(b)(2)) to certify the request of the foreign government to enforce a judgment.  Thus, a certification by the Attorney General in the year 2050 of the Republic's request for enforcement of the 2009 forfeiture judgment would result in a timely enforcement application.  By contrast, a judgment for civil forfeiture arising from

---

[3]  Application of Section 2462 to this proceeding was briefed in *Swezey v. Merrill Lynch*, No. 155600 (Sup. Ct. N.Y.).  The United States participated as an amicus or advisor at various stages in the case, and received the Class' briefs on the statute of limitations and the Agcaoili expert report more than six months ago.

violation of an Act of Congress is barred if not filed within five years of the wrongdoing.  The upshot is that the limited exception Congress created in Section 2467 -- to override the centuries' old doctrine prohibiting enforcement of foreign forfeiture judgments – would be a gaping hole allowing enforcement of foreign forfeitures far broader than the enforcement of domestic forfeitures.

While protracted litigation may occur in the foreign country court, Section 2467 gives the Attorney General the power to bring an action to obtain a restraining order as to any property located in the United States once the foreign government initiates a civil forfeiture in the foreign court seeking that property.  *See* § 2467(d)(3).  The Attorney General has done this many times.  *See e.g. In re Restraint of Twenty Real Properties in California and Florida Owned or Controlled by Fabrice Touil or Richard Touil*, No. 16-MC-1612 (CKK), 2019 WL 481167, at *4 (D.D.C. Feb. 6, 2019).  Once a foreign forfeiture judgment is obtained, the Attorney General can amend its action to seek to enforce the foreign judgment.

### C.    The 2009 Sandiganbayan Judgment Was a "Final Judgment"

In prior briefing on the statute of limitations, it was also contended that Section 2462 does not start to run until the 2009 forfeiture judgment was final in 2014 after all appeals.  In a federal question case construing a federal statute, a court in the United States applies federal law.  Section 2467 defines a "forfeiture judgment" as a "final order" of a foreign nation compelling" a person to pay a sum of money or forfeit property.  The Federal Rules of Civil Procedure are specific as to what constitutes a "final judgment."  Rule 58 provides the mechanism for entering a final judgment.  Rule 54 permits a court to "direct entry of a final judgment as to one or more, but fewer than all, claims."  The United States Supreme Court defines a final judgment as a judgment of the trial court which conclusively determines all pending claims of all the parties to

the litigation.  In *Cunningham v. Hamilton Cty., Ohio*, 527 U.S. 198, 203, 119 S. Ct. 1915, 1919, 144 L. Ed. 2d 184 (1999), the Court stated:

> Section 1291 of the Judicial Code generally vests courts of appeals with jurisdiction over appeals from "final decisions" of the district courts. It descends from the Judiciary Act of 1789, where "the First Congress established the principle that only 'final judgments and decrees' of the federal district courts may be reviewed on appeal." In accord with this historical understanding, we have repeatedly interpreted § 1291 to mean that an appeal ordinarily will not lie until after final judgment has been entered in a case. [citations omitted]

*See also Petrello v. White*, 533 F.3d 110, 113 (2d Cir. 2008) and *Swede v. Rochester Carpenters Pension Fund*, 467 F.3d 216, 219 (2d Cir. 2006).   Therefore, the 2009 judgment of the Sandiganbayan is a final judgment.

Were this Court to apply Philippine substantive law, the result would be the same. Petitioners have attached the expert report of Federico Agcaoili, a highly qualified Philippine attorney, on the question of whether the Sandiganbayan judgment was a "final Judgment." Citing seminal decisions of the Philippine Supreme Court, Agcaoili concluded that:

> It is my opinion that the judgment of the Sandiganbayan (The Philippine Graft Court) was a "final judgment" under Philippine law upon rendition of the judgment in 2009. Philippine law draws a distinction between (a) a judgment which is final after proceedings before the trial court are complete, and (b) when a final judgment becomes executory after no appeal is taken; or after appellate proceedings are completed.

Agcaoili points out that the Sandiganbayan judgment was appealed, and a prerequisite to appeal was that the trial court judgment constitute a "final judgment" under Philippine law.

## IV.     CONCLUSION

For all the foregoing reasons, this Section 2467 enforcement proceeding is barred by the

five-year statute of limitations in 28 U.S.C. § 2462 and must be dismissed with prejudice.


Dated:  September 18, 2019
       New York, New York       By:   /s/Robert A. Swift
                                      Robert A. Swift
                                      (Admitted *pro hac vice*)
                                      Kohn, Swift & Graf, P.C.
                                      1600 Market Street, 25th Floor
                                      Philadelphia, PA 19103
                                      (215) 238-1700

                                      Jeffrey E. Glen
                                      Anderson Kill, P.C.
                                      1251 Avenue of the Americas
                                      New York, NY  10020
                                      (212) 278-1000

                                      Of Counsel:

                                      Sherry P. Broder
                                      Sherry P. Broder – A Law Corporation
                                      500 Ala Moana Boulevard, Suite 7400
                                      Honolulu, HI 96813
                                      (808) 531-1411

                                      *Attorneys for Intervening Respondent Jose Duran*
                                      *and the Class of Filipino Judgment Creditors*
                                      *Certified in MDL No. 840*