UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: ENFORCEMENT OF PHILIPPINE FORFEITURE JUDGMENT AGAINST ALL ASSETS OF ARELMA, S.A., FORMERLY HELD AT MERRILL LYNCH, PIERCE, FENNER & SMITH, INCORPORATED, INCLUDING, BUT NOT LIMITED TO, ACCOUNT NUMBER 165-07312, AND ALL INTEREST, INCOME OR BENEFITS ACCRUING OR TRACEABLE THERETO | Misc. No. 19-412 (LAK)<br><br>EXPERT REPORT OF<br>FEDERICO R. AGCAOILI |

SUPREME COURT OF THE STATE OF NEW YORK
NEW YORK COUNTY
COMMERCIAL DIVISION

| | |
|---|---|
| OSQUAGAMA F. SWEZEY and JOSE DURAN, on their Behalf and as Representatives of a Class of Judgment Creditors of the Estate of FERDINAND E. MARCOS,<br><br>*Petitioners*<br><br>-against-<br><br>MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED and NEW YORK CITY DEPARTMENT OF FINANCE<br><br>*Respondents,*<br><br>-and-<br><br>PHILIPPINE NATIONAL BANK and ARELMA INC.<br><br>*Intervenors* | New York County<br><br>Index No. 155600/2013 (J. Borrok)<br><br><br><br>**EXPERT REPORT OF**<br>**FEDERICO R. AGCAOILI** |

1. I am an attorney licensed and admitted to the practice of law in the Philippines and have practiced law for over forty-four (44) years.

2. Attached is a copy of my curriculum vitae (**Annex "A"**).

3. As a law practitioner, I have handled civil litigations before the Municipal Courts and the Regional Trial Courts, and engaged in appellate court practice before the Sandiganbayan (also known as the Philippine Graft Court), the Court of Appeals and the Supreme Court in the Philippines. I am also a Past President of the Philippine Bar Association (PBA) the oldest and largest voluntary bar association in the Philippines. I was also a former elected member of the Provincial Board of Quezon, the legislative body of the Province. I have been the Legal Counsel of a number of corporations, among them, the Filipino Association for Mariners Employment (FAME), the biggest association of manning agents in the Philippines.

4. In my legal practice in the Philippines, I have specialized in litigation and admiralty/maritime labor cases. I have appeared as expert witness on Philippine law and jurisprudence in the United Kingdom and the

United States in admiralty proceedings. In 2011, I was qualified as an expert witness on Philippine law in an interpleader proceeding in the High Court of Singapore in which the Class of Filipino Human Rights Victims was opposed to the Republic of the Philippines. The Court relied on my expert testimony regarding Philippine Republic Act No. 1379 (Forfeiture Law) in its ruling.

5. In addition, in 2016 I furnished an expert report for the Class of Filipino Human Rights Victims in litigation in the United States District Court for the Southern District of New York known as *District Attorney of New York v. Republic of the Philippines et al.*, No. 14-890. I gave a deposition in that case.

6. I have been requested by Class Counsel for the Plaintiffs to provide an expert opinion on a contested legal issue in the above-captioned litigation, to wit: when is a judgment deemed final for purposes of Philippine law.

7. I am informed that on April 2, 2009, the Sandiganbayan (The Philippine Graft Court) rendered a forfeiture judgment in favor of the Republic as to certain assets of Arelma, Inc. That judgment was appealed to the Philippine Supreme Court which affirmed the judgment on April 25, 2012 in *Marcos, Jr. v. Republic*, 671 SCRA 280. The Supreme Court denied a motion for reconsideration on March 12, 2014.

8. It is my opinion that the judgment of the Sandiganbayan (The Philippine Graft Court) was a "final judgment" under Philippine law upon rendition of the judgment in 2009. Philippine law draws a distinction between (a) a judgment which is final after proceedings before the trial court are complete, and (b) when a final judgment becomes executory after no appeal is taken; or after appellate proceedings are completed.

9. In the seminal case of *"Investments, Inc. vs. Court of Appeals"* G.R. No. L-60036, January 27, 1987, 147 SCRA 334 (**Annex "B"**) the Philippine Supreme Court held that the concept of a "final" judgment, as distinguished from one which has "become final" or "executory", is settled in Philippine jurisprudence. A "final" judgment or order is one that finally disposes of a case, leaving nothing more to be done by the Court in relation thereto. A final judgment is an adjudication on the merits which declares what the rights and obligations of the parties are. Once rendered, the task of the Court is accomplished, insofar as deciding the controversy is concerned. Nothing more remains to be done by the Court except to await the next move of the litigants.

10. In the same *Investments, Inc. vs. Court of Appeals Case,* the Philippine Supreme Court clarified that a "final judgment", as above described, will attain finality and become "executory" in either of two instances: firstly, no appeal was duly perfected upon expiration of the period to appeal; and secondly, where an appeal had been taken, and the

judgment of the appellate court in turn becomes final, and the records of the case are returned to the Court of origin. The "final" judgment previously rendered by the trial court is then correctly categorized as a *"final and executory judgment"*; in which case, execution will issue as a matter of right. It bears stressing that only a "final" judgment or order, or one that finally disposes of the action of proceeding can attain finality and become executory.

11. The above ruling of the Philippine Supreme Court in the Investments, Inc. vs. Court of Appeals Case was cited as authority in subsequent cases, particularly, the decisions in the case of "Maria Carminia Calderon vs. Roxas" G.R. No. 185595, January 9, 2013 and more recently, the decision of the Supreme Court in "Teresa Ignacio vs. Ramon Reyes" G.R. No. L- 213192, July 12, 2017. Consequently, any reference to a "final" judgment, insofar as Philippine law is concerned, should mean a final judgment that was rendered by a trial court, which disposed of the entire controversy on the merits; leaving nothing to be resolved as to the rights and obligations of the parties.

12. In light of the foregoing jurisprudential pronouncements, it is my view that the judgment of the Sandiganbayan (Philippine Graft Court) in April 2009 was a "final" judgment because it finally disposed of all the issues in the pending action. There was nothing more for the Sandiganbayan to resolve in respect of the case as it had made a determination of all matters raised in the controversy. The fact that the Sandiganbayan decision was subsequently appealed to the superior courts, and finally to the Supreme Court, shows that it is definitely a "final" judgment; because only final judgments or orders may be subject to an appeal.

**FEDERICO B. AGCAOILI**
Affiant

SUBSCRIBED AND SWORN TO before me in the City of Makati this FEB 1 8 2019 of February 2019, affiant exhibiting to me his Philippine Passport No. EB7381402, as competent proof of his identity.

Doc. No. 183;
Page No. 38;
Book No. 50;
Series of 2019.

ATTY. JOSHUA P. LAPUZ
Notary Public Makati City
Until Dec 31, 2019
Appointment No. M-82-(2018-2019)
PTR No. 7333096/Jan. 3, 2019/ Makati
IBP Lifetime No. 04897 Roll No. 45790
MCLE Compliance No. V-0019692
G/F Fedman Bldg., 199 Salcedo St.
Legaspi Village, Makati City



# CURRICULUM VITAE
# OF
# FEDERICO R. AGCAOILI

### A. *PERSONAL CIRCUMSTANCES:*

| | |
|---|---|
| Full Name | : FEDERICO AGCAOILI y REYES |
| Date of Birth | : September 14, 1947 |
| Place of Birth | : Lucena City, Philippines |
| Citizenship | : Filipino |
| Civil Status | : Married |
| Name of Spouse | : Stella S. Estrella |
| Residence Address | : 26 Scout Tuazon, Diliman Quezon City, Philippines |
| Telephone Numbers | : 374-3465 and 946-1026 - Residence<br>: 893-5193 & 892-7182 - Office |
| Facsimile Numbers | : (632) 946-1026 – Residence<br>: (632) 818-8672 – Office |
| Office Name & Address | : AGCAOILI LAW OFFICES<br>4th Floor, Fedman Suites<br>199 Salcedo St., Legaspi Village<br>Makati City 1200, Philippines |
| E-Mail | : ricoagcaoili@gmail.com |

**B.    EDUCATIONAL BACKGROUND:**

|  |  |
|---|---|
| Elementary | : ATENEO DE MANILA UNIVERSITY (Graduated 1961) |
| High School | : ATENEO DE MANILA UNIVERSITY (Graduated 1965) |
| College | : ATENEO DE MANILA UNIVERSITY (Graduated 1969) |
| Bachelor's Degree | : BACHELOR OF ARTS, MAJOR IN POLITICAL SCIENCE |
| Post Graduate | : UNIVERSITY OF THE PHILIPPINES (Graduated 1973) |
| Degree | : BACHELOR OF LAWS (LLB) |

**C.    GOVERNMENT EXAMINATION AND PROFESSIONAL LICENSE:**

: Philippine Bar Examinations administered by the Supreme Court in 1973 and admitted to practice as an Attorney and Counsellor at law on June 19, 1974.
Roll of Attorney's Number 25086

**D.    GOVERNMENT POSITION HELD:**

: Elected to the Provincial Board (Sangguniang Panlalawigan) of Quezon in 1980.

: appointed as OIC member of the Provincial Board (Sangguniang Panlalawigan) of Quezon in 1986 and served until 1988.

**E.    PRESENT POSITION/ACTIVITIES:**

: Principal Partner and Counsel – Agcaoili Law Offices
: Past President – Philippine Bar Association
: Member – Integrated Bar of the Philippines (IBP) Quezon Chapter;
: Member – Upsilon Sigma Phi Fraternity, University of the Philippines
: Chairman – Baguio Country Club Corporation;
: Retained counsel and corporate secretary of various corporations.

2

**F.**  **<u>AS PHILIPPINE BAR ASSOCIATION DIRECTOR/ OFFICER:</u>**

- Chairman of the Committee on Human Rights 1998-1999;

- Co-chairman of the "Tulong Laya" Legal Clinic for inmates of New Bilibid Prisons 2000-2001;

- Member, Legal Aid Committee 1999-2002;

- Member, Free Legal Services Committee;

- Member, Sub-Committee on National Moot Court Competition – Supreme Court Centenary Celebration 2000-2001;

- Member, Board of Judges for the choice of the Centennial Judges of the Philippines – June 6, 2001;

- Attended the Alternative Dispute Resolution Mediation Seminar;

- Attended the Centenary Lecture Series of the Supreme Court;

- Supported the Memorandum of Agreement – with OLAMWA (Office of Legal Assistant for Migrant Workers) under the Department of Foreign Affairs (DFA) – for PBA to provide Free Legal Counseling to migrant workers.

- Executed the Memorandum of Agreement with the Association of Law Students – to encourage information and cooperation in symposia and other law-related activities.

- Launched in June 2001 the Philippine Bar Association website to bring information about the Association, the law and other bar related matters more accessible to the members and the public.

- Represented the Philippines Bar Association in the drafting of the Rules of Court on Environment Protection as Chairman of the Committee on Special Projects.

- Represented the Philippine Bar Association with Atty. Antonio Oposa in the MMDA vs. Concerned Residents of Manila Bay Supreme Court case of 2008 where the Court issued a Writ of Continuing Mandamus for the MMDA and other government agencies to restore Manila Bay to swimming quality.

CERTIFIED CORRECT:

FEDERICO D. AGCAOILI

No. L-60036. January 27, 1987.*

INVESTMENTS, INC., petitioner, *vs.* COURT OF APPEALS, TOBACCO INDUSTRIES OF THE PHILIPPINES, INC., and THE SHERIFF OF THE CITY OF MANILA, respondents.

*Remedial Law; Civil Procedure; Judgments; Concept of "final judgment," as distinguished from one which has become "final" (or "executory"); Interlocutory order, concept of.*—The concept of "final" judgment, as distinguished from one which has "become final" (or "executory" as of right [final and executory]), is definite and settled. A "final" judgment or order is one that finally disposes of a case, leaving nothing more to be done by the Court in respect thereto, e.g., an adjudication on the merits which, on the basis of the evidence presented at the trial, declares categorically what the rights and obligations of the parties are and which party is in the right; or a judgment or order that dismisses an action on the ground, for instance, of *res adjudicata* or prescription. Once rendered, the task of the Court is ended, as far as deciding the controversy or determining the rights and liabilities of the litigants is concerned. Nothing more remains to be done by the Court except to await the parties' next move (which among others, may consist of the filing of a motion for new trial or reconsideration, or the taking of an appeal) and ultimately, or course, to cause the execution of the judgment once it becomes "final" or, to use the established and more distinctive term, "final and executory." Conversely, an order that does not finally dispose of the case, and does not end the Court's task of adjudicating the parties' contentions and determining their rights and liabilities as regards each other, but obviously indicates that other things remain to be done by the Court, is "interlocutory," e.g., an order denying a motion to dismiss under Rule 16 of the Rules, or granting a motion for extension of time to file a pleading, or authorizing amendment thereof, or granting or denying applications for postponement, or production or inspection of documents or things, etc. Unlike a "final" judgment or order, which is appealable, as above pointed out, an "interlocutory" order may not be questioned on appeal except only as part of an appeal that may eventually be taken from the final judgment rendered in the case.

_____

* FIRST DIVISION.

Case 1:19-mc-00412-LAK   Document 41   Filed 09/18/19   Page 10 of 17

*Same; Same; Same; Same; Same; Purpose of the rule.*—The rule is founded on considerations of orderly procedure, to forestall useless appeals and avoid undue inconvenience to the appealing party by having to assail orders as they are promulgated by the court, when all such orders may be contested in a single appeal.

*Same; Same; Same; Same; Same; "Final judgment" correctly categorized as a "final and executory judgment;" Only a final judgment or order can become final and executory.*—Now, a "final judgment" in the sense just described becomes final "upon expiration of the peirod to appeal therefrom if no appeal has been duly perfected" or, an appeal therefrom having been taken, the judgment of the appellate tribunal in turn becomes final and the records of the case are returned to the Court of origin. The "final" judgment is then correctly categorized as a "final and executory judgment" in respect to which, as the law explicitly provides, "execution shall issue as a matter of right." It bears stressing that only a final judgment or order, i.e., "a judgment or order that finally disposes of the action of proceeding" can become final and executory.

*Same; Same; Same; Same; Preliminary Injunction; Effectivity of preliminary injunction ended upon rendition by trial court of its judgment on the merits regardless of its appealability or actual taking of appeal from the judgment.*—There is no showing that the parties and their counsel intended to give the term "final judgment" a special signification, a meaning other than that accorded to it by law and established usage. Their agreement must therefore be construed to mean exactly what it says, that upon rendition by the Trial Court on December 9, 1981 of its judgment on the merits, i.e., its "final judgment," the life and effectivity of the preliminary injunction came to an end, regardless of the appealability of, or the actual taking of an appeal from, said judgment. The petitioner's theory of the case, founded on its concept of a "final judgment" is erroneous and cannot be sustained.

PETITION for certiorari to review the decision of the Court of Appeals.

The facts are stated in the opinion of the Court.

NARVASA, *J.:*

The petitioner seeks the nullification by *certiorari* of two resolutions of respondent Court of Appeals in CA G.R. No. Sp.

08253-R: one dated December 9, 1981, denying its motion *inter alia* to declare void the auction sale held on August 24, 1981 at the instance of respondent Tobacco Industries of the Philippines, Inc.; and another dated January 13, 1982 denying its motion for extension of time to file a motion for reconsideration. The petitioner also seeks to compel respondent Court by *mandamus* to enforce an earlier resolution in the same case dated December 12, 1979, for the return to it of the chattels sold at public auction.

The instant petition originated from Civil Case No. 116617, instituted by Investments, Inc. (hereinafter referred to simply as "Investments") on July 7, 1978 in the Court of First Instance of Manila against the private respondent, Tobacco Industries of the Philippines, Inc. ("TIP").[1] The action was for the annulment of a chattel mortgage executed by Investments in TIP's favor covering five cigarette-making machines, which were about to be sold on foreclosure by the latter. Initially a temporary restraining order was issued by the Court ex-parte enjoining the Sheriff from proceeding with the auction sale of the machines. But not long afterwards, the Trial Court promulgated an order denying Investments' application for a writ of injunction and dissolving the temporary restraining order.[2] Unable to obtain a reconsideration of the order, Investments brought the matter to the Court of Appeals on *certiorari* and prohibition.[3]

That Court, on December 21, 1978, directed issuance of a writ of preliminary injunction against the threatened auction sale upon Investments' posting a bond in the amount of ₱75,000.00. Subsequently, however, by resolution dated May 15, 1979, the Court dismissed Investment's petition and lifted the injunction. Investments filed a motion for reconsideration, at the hearing of which it argued for the reinstatement of the

---

[1] Entitled "Investments, Inc. vs. Tobacco Industries of the Phils., Inc." The Sheriff of Manila was subsequently impleaded as defendant by an amended complaint.

[2] Rollo, pp. 54-56.

[3] Entitled "Investments, Inc. vs. Hon. Alfredo Florendo, Tobacco Industries of the Phils, and the Sheriff of Manila." CA-G.R. No. SP-08253-R.

Case 1:19-mc-00412-LAK Document 41 Filed 09/18/19 Page 12 of 17

preliminary injunction since "the hearing on the merits of the main case below is about to be terminated." The Appellate Court then suggested that the injunction bond be increased to ₱650,000.00 to cover the principal obligation. The suggestion having been accepted by both parties, Investments accordingly filed a bond in the increased amount. The Court approved the bond on September 24, 1979 and issued a restraining order which in effect reinstated the injunction earlier granted.

On December 12, 1979 the Court of Appeals promulgated a Resolution declaring that without prejudice to the early conclusion of the case in the Trial Court, it deemed the proceedings before it terminated because it had already "stopped the sale . . . of the machines . . . until final judgment shall have been rendered in Civil Case No. 116617."[4] In due course, the Clerk of Court caused entry of judgment in CA-G.R. No. SP-08253-R, but what was inadvertently entered was the dispositive portion of the previous resolution of May 15, 1979 dismissing the petition for certiorari, and no reference whatever was made to the subsequent resolutions of September 24 and December 12, 1979.[5]

Trial in Civil Case No. 116617 having continued in the meantime, judgment therein was rendered on December 19, 1980, dismissing Investments' complaint for lack of merit, and awarding moral and exemplary damages to TIP. Investments appealed that decision to the Court of Appeals.

TIP filed with the Trial Court a motion for execution pending appeal;[6] and with the Court of Appeals—in CA-G.R. No. SP-08253-R—a motion to lift the writ of preliminary injunction.[7] Investments opposed both motions on the ground that the injunction issued by the Appellate Court against the holding of the auction sale was meant to subsist until "final judgment in Civil Case No. 116617," and since the decision rendered in said case was not yet final and executory, said injunction was still in force. What the Court of Appeals did,

---

[4] Rollo, pp. 98-100.
[5] Rollo, p. 101.
[6] Rollo, pp. 226-227.
[7] Id., pp. 102-104.

*Investments, Inc. vs. Court of Appeals*

however was to declare, by Resolution dated June 9, 1981, that it was no longer entertaining the pending incidents on the ground that the case before it (CA-G.R. No. SP-08253) had long been terminated. In so declaring the Court evidently relied only on the dispositive portion of its resolution of May 15, 1979 erroneously entered by the Clerk of Court (dismissing Investment's petition for certiorari and prohibition) and failed to take account of the injunction it had issued thereafter (upon the filing of a bond in the increased amount of ₱650,000.00). TIP then caused the mortgaged chattels to be sold by the Sheriff at a public auction on August 24, 1981, at which sale it was the successful bidder.

Investments forthwith filed with respondent Court of Appeals a motion for contempt and for annulment of the sale. The Court's response was to issue on August 28, 1981 a temporary restraining order stopping TIP from taking possession of the machines, and commanding their return to Investments if already in TIP's possession.[8] Subsequently, however, by Resolution dated December 9, 1981, the Court denied Investment's plea for nullification of the sale and for an adjudication of TIP's liability for contempt. In that resolution of December 9, 1981, the Appellate Court sustained TIP's position that the restraining order enjoining the sale of the mortgaged chattels had lapsed upon the rendition of final judgment in Civil Case No. 116617, irrespective of the appeal taken therefrom. The Court also declared valid the auction sale of August 24, 1981, and dissolved the restraining order embodied in the Resolution of August 28, 1981 said resolution having been "intended as a temporary measure pending determination of the status of the main case below." Finally, the respondent Court dismissed the contempt charges, finding TIP's offer to put up a counterbond in lieu of returning the machines to be substantial compliance with said resolution of August 28, 1981.[9]

Investments then presented a motion for extension of time to file a motion for reconsideration, pleading time pressure,[10] which was denied for lack of merit.[11] Hence, the present peti-

---

[9] Rollo, pp. 142-146.
[10] Rollo, pp. 147-148.
[11] Rollo, p. 163.

tion.

As is at once apparent, the crux of the controversy is the effective life of the preliminary injunction of the Appellate Court as regards the auction sale of Investments' cigarette-making machines, dated December 21, 1978 which, after having been lifted, was reinstated upon the filing by Investments of the increased injunction bond of ₱650,000.00 on September 24, 1979. The parties do not dispute the fact that the injunction was to subsist "until final judgment shall have been rendered in Civil Case No. 116617." The point about which they differ is the meaning to be accorded to the term, "final judgment" in the context of Civil Case No. 116617. Investments theorizes that the judgment rendered by the Trial Court in said Civil Case No. 116617 on December 19, 1980 was not a "final judgment" because it was an appealable judgment and had, in fact, been appealed seasonably. TIP, for its part, asserts that that judgment was in truth a "final judgment" as the term is used in procedural law, even if appealable and hence, upon its rendition, the preliminary injunction of the Appellate Court expired, its life having precisely been fixed to endure until such judgment shall have been rendered.

The concept of "final" judgment, as distinguished from one which has "become final" (or "executory" as of right [final and executory]), is definite and settled. A "final" judgment or order is one that finally disposes of a case,[12] leaving nothing more to be done by the Court in respect thereto, e.g., an adjudication on the merits which, on the basis of the evidence presented at the trial, declares categorically what the rights and obligations of the parties are and which party is in the right; or a judgment or order that dismisses an action on the ground, for instance, of *res adjudicata* or prescription. Once rendered, the task of the Court is ended, as far as deciding the controversy or determining the rights and liabilities of the litigants is concerned. Nothing more remains to be done by the Court except to await the parties' next move (which among others, may consist of the filing of a motion for new trial or reconsideration, or the taking of an appeal) and ultimately, of course, to cause the execution of the judgment once it becomes

---

[12] Sec. 1, Rule 39.

"final" or, to use the established and more distinctive term, "final and executory."

"* * * (A)n order or judgment is deemed final when it finally disposes of the pending action so that nothing more can be done with it in the trial court. In other words, a final order is that which gives an end to the litigation. . . When the order or judgment does not dispose of the case completely but leaves something to be done upon the merits, it is merely interlocutory."[13]

"A final order or judgment finally disposes of, adjudicates, or determines the rights, or some right or right of the parties, either on the entire controversy or on some definite and separate branch thereof, and concludes them until it is reversed or set aside. . . Where no issue is left for future consideration, except the fact or compliance or non-compliance with the terms of the judgment or order, such judgment or order is final and appealable."[14]

Conversely, an order that does not finally dispose of the case, and does not end the Court's task of adjudicating the parties' contentions and determining their rights and liabilities as regards each other, but obviously indicates that other things remain to be done by the Court, is "interlocutory," e.g., an order denying a motion to dismiss under Rule 16 of the Rules, or granting a motion for extension of time to file a pleading, or authorizing amendment thereof, or granting or denying applications for postponement, or production or inspection of documents or things, etc. Unlike a "final" judgment or order, which is appealable, as above pointed out, an "interlocutory" order may not be questioned on appeal except only as part of

---

[13] PLDT Employees' Union v. PLDT Co. Free Tel. Workers' Union, 97 Phil. 424, citing Moran, Comments on the Rules, 1952 ed., Vol. 1, pp. 894-895, Nico v. Blanco, 81 Phil. 213 and Jodges v. Villanueva, 90 Phil. 255, Mejia v. Alimorong, 4 Phil. 572; Rios v. Ros, 79 Phil. 243; Kapisanan ng mga Manggagawa sa MRR Co. v. Yard Crew Union, et al., 109 Phil. 1150; Antonio v. Samonte, 1 SCRA 1072; Acting Director, National Bureau of Investigation vs. Hon. Caluag, et al., 2 SCRA 541; Bairan v. Tan Siu Lay, et al., 18 SCRA 1239; Dela Cruz v. Hon. Paras and San Miguel, 69 SCRA 556.

[14] Antonio v. Samonte, *supra*, quoting 4 C.J.S. 257-258, 268; Dela Cruz v. Hon. Paras and San Miguel, *supra*; Valdez v. Hon. Bagaso, et al., 82 SCRA 22.

VOL. 147, JANUARY 27, 1987     341

*Investments, Inc. vs. Court of Appeals*

an appeal that may eventually be taken from the final judgment rendered in the case.

"** Only final judgments or orders shall be subject to appeal. No interlocutory order shall stay the progress of an action, nor shall it be subject of appeal until final judgment is rendered for one party or another."[15]

The rule is founded on considerations of orderly procedure, to forestall useless appeals and avoid undue inconvenience to the appealing party by having to assail orders as they are promulgated by the court, when all such orders may be contested in a single appeal.[16]

Now, a "final judgment" in the sense just described becomes final "upon expiration of the peirod to appeal therefrom if no appeal has been duly perfected"[17] or, an appeal therefrom having been taken, the judgment of the appellate tribunal in turn becomes final and the records of the case are returned to the Court of origin.[18] The "final" judgment is then correctly categorized as a "final and executory judgment" in respect to which, as the law explicitly provides, "execution shall issue as a matter of right."[19] It bears stressing that only a final judgment or order, i.e., "a judgment or order that finally disposes of the action of proceeding"[20] can become final and executory.

There is no showing that the parties and their counsel intended to give the term "final judgment" a special signification, a meaning other than that accorded to it by law and established usage. Their agreement must therefore be construed to mean exactly what it says, that upon rendition by the Trial Court on December 9, 1981 of its judgment on the merits, i.e., its "final judgment," the life and effectivity of the preliminary injunction came to an end, regardless of the ap-

---

[15] Sec. 2, Rule 41.
[16] See PLDT Employees' Union v. PLDT Co. Free Tel. Workers' Union, *supra*, 97 Phil. 424, 427.
[17] Sec. 1, Rule 39, Rules of Court.
[18] Sec. 11, Rule 51, Rules of Court.
[19] Sec. 1, Rule 39, *supra*.
[20] Id.

pealability of, or the actual taking of an appeal from, said judgment. The petitioner's theory of the case, founded on its concept of a "final judgment" is erroneous and cannot be sustained.

WHEREFORE, the petition is dismissed, with costs against petitioner.

SO ORDERED.

*Yap, Melencio-Herrera, Cruz, Feliciano,* and *Gancayco, JJ.,* Concur.

**Notes.**—Preliminary mandatory injunction is provided by law by way of support for speedy adjudication of ejectment cases to have the disposed parity from further damages. (*Ubarra vs. Animas,* 134 SCRA 87.)

A petition for review by certiorari of an order of preliminary mandatory injunction is dismissed after main case is decided on the merits. (*Quesada vs. Court of Appeals,* 137 SCRA 590).

Injunction, not to be issued where the basis for doubt as to the genuineness and validity of the agreement as the sole basis for the injunction had not been successfully established. (*Hernandez vs. Magat,* 137 SCRA 787.)

———o0o———

No. L-72740.　January 27, 1987.*

SPOUSES MARCIANO IPAPO AND BENITA SORIANO IPAPO, petitioners, *vs.* THE INTERMEDIATE APPELLATE COURT AND CLAUDIA P. SUAREZ, respondents.

*Remedial Law; Civil Procedure; Motions; Motions for extension of time to file motion for reconsideration; Clarificatory resolution in* Habaluyas vs. Japson *that motion for extension of time to file a motion for new trial or reconsideration may be filed in the metropolitan and municipal courts, regional trial courts and IAC, except in cases*

———
* SECOND DIVISION.