UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

_____

| | |
|---|---|
| IN RE:  ENFORCEMENT OF PHILIPPINE ) <br> FORFEITURE JUDGMENT AGAINST ALL ) <br> ASSETS OF ARELMA, S.A., FORMERLY ) <br> HELD AT MERRILL LYNCH, PIERCE, ) <br> FENNER & SMITH, INCORPORATED, ) <br> INCLUDING, BUT NOT LIMITED TO, ) <br> ACCOUNT NUMBER 165-07312, AND ) <br> ALL INTEREST, INCOME OR BENEFITS ) <br> ACCRUING OR TRACEABLE THERETO ) | Misc. No. 19-412-LAK-GWG |

_____

**MEMORANDUM IN SUPPORT OF UNITED STATES' MOTION FOR SUMMARY JUDGMENT AGAINST ROXAS STANDING**

Pursuant to Fed. R. Civ. P. 56(a), the United States of America respectfully moves for summary judgment dismissing the Estate of Roger Roxas ("Roxas") from this case for lack of Article III standing.

## I. Background

### a. The Philippines Forfeiture Judgment Against the Arelma Assets

The Republic of the Philippines elected Ferdinand Marcos president in 1965 and 1969. Dkt. 1 ("Application") ¶ 6. In September 1972, Marcos declared martial law. *Id*. His dictatorship ended in 1986 and he fled to Hawaii. *Id*.

Arelma S.A. was formed to hold an investment account for Marcos at Merrill Lynch in New York, into which $2 million was deposited in 1972. *Id*. at ¶ 7. The deposit—hereinafter "the Arelma Assets"—has increased in value and is now worth over $40 million. *Id*.

In 1991, the Republic initiated proceedings in the Sandiganbayan—a Philippine anti-corruption court—to seek forfeiture of numerous Marcos assets, including the Arelma Assets. *Id*. at ¶ 10. The Republic moved for partial summary judgment against the Arelma Assets in 2004. *Id*. at ¶ 12. On April 2, 2009, the Sandiganbayan granted the Republic's motion and forfeited the Arelma Assets to the Republic. Dkt. 1-1, Ex. 1. After all appeals were exhausted, the Sandiganbayan issued a Writ of Execution on August 18, 2014. Dkt. 1-1, Ex. 5.

### b. This Section 2467 Case to Enforce the Philippine Judgment

In January 2015, the Republic formally requested the assistance of the U.S. Government to enforce its forfeiture judgment against Arelma and all its assets. Application ¶ 13. Pursuant to 28 U.S.C. § 2467(b)(2), on February 11, 2016, the Assistant Attorney General for the DOJ Criminal Division certified that the Republic's request was in the interests of justice. *Id*. at ¶ 14. The U.S. Government subsequently filed this Section 2467 enforcement case on June 27, 2016.

1

### c. Roxas' Participation in This Case

Roxas is the Estate of Roger Roxas, an amateur treasure hunter who allegedly discovered a Word War II-era Japanese treasure (the "Yamashita treasure") buried in the Philippines. Together with its affiliated corporation, Golden Budha [sic] Corporation, Roxas brought suit against Ferdinand and Imelda Marcos in Hawaii state court, alleging that they tortured Roxas and stole the treasure. Roxas eventually won a money judgment for false imprisonment and battery, while Golden Budha Corporation won a money judgment for conversion of the treasure. *See Estate of Roxas v. Marcos*, 121 Haw. 59, 73 (2009). Notably, Roxas has not secured its money judgment against the Arelma Assets, by way of lien, levy, or other legal attachment. When asked in discovery to produce "[a]ny document evidencing a current levy, attachment, lien, or other secured interest that you or Golden Budha Corporation had with respect to the Arelma Assets in New York or any other jurisdiction," Roxas simply replied: "Response: None." Sohn Decl., Ex. 2 at 5.

Nonetheless, Roxas sought to enter this Section 2467 case and contest the Government's enforcement of the Philippine forfeiture judgment over the Arelma Assets. In January 2020, this Court held that Roxas satisfied the procedural *statutory* requirements for entering this case. Dkt. 98 at 58-59. However, the Court stressed that "a ruling on this point does not resolve any questions regarding what interest, if any, that Roxas has in the Arelma assets." *Id.* at 59:18-20.

## II. Legal Standard

Roxas's status in this case is equivalent to a "claimant" in a traditional forfeiture case—*i.e.*, a third-party who voluntarily enters the case post-filing and seeks to contest forfeiture. "In order to contest a governmental forfeiture action, claimants must have both standing under the statute or statutes governing their claims and standing under Article III of the Constitution as

2

required for any action brought in federal court." *United States v. Cambio Exacto, S.A.*, 166 F.3d 522, 526 (2d Cir. 1999). The Court's January 2020 order effectively found that Roxas had statutory standing by complying with the procedural requirements to enter this case. Dkt. 98 at 58-59. Yet Roxas must also have Article III standing, which is a distinct requirement from statutory standing and which cannot be erased or dispensed with. *Cambio Exacto*, 166 F.3d at 526; *United States v. v. $16,037.00*, No. 19-CV-1056-LJV-MJR, 2022 WL 3701197, at *4 (W.D.N.Y. Aug. 26, 2022) ("Claimants in a civil forfeiture action need both standing under the statute or statutes governing their claims ('statutory standing') and standing under Article III of the Constitution ('Article III standing').").

The familiar elements of Article III standing are injury-in-fact, causation, and redressability. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). The showing required to satisfy these elements varies depending on the stage of the litigation. *Id.* at 561. At the pleading stage, a party need only allege injury-in-fact, but at the summary judgment stage must come forward with sufficient evidence to show a triable issue of fact as to its supposed injury. *Id.*

This case is now at summary judgment. Thus, for Roxas to continue in this case, Roxas must come forward with triable evidence that it would suffer injury-in-fact from enforcement of the Philippine judgment over the Arelma Assets.

### III. Argument

#### A. Roxas Cannot Show Article III Standing Because Roxas Is Merely an Unsecured Judgment Creditor of Imelda Marcos and the Marcos Estate

As recounted above, Roxas is, at most, a general unsecured judgment creditor of Imelda Marcos and the Marcos Estate. Roxas has not secured its money judgment against the Arelma Assets, by way of lien, levy, or other legal attachment. But as this Court already held: "case law

3

is clear that a general unsecured creditor does not possess a legal right, title, or interest in the property that is forfeited . . . ." Dkt. 98 at 61:25-62:2; *accord In re 650 Fifth Ave. & Related Prop.*, No. 08-Civ.-10934, 2014 WL 1998233, at *4 (S.D.N.Y. May 15, 2014) ("A general unsecured creditor 'does not possess a legal right, title, or interest in the property that [is] forfeited as required for standing.'"); *United States v. All Assets Held at Bank Julius Baer & Co.*, 772 F. Supp. 2d 191, 198-99 (D.D.C. 2011) ("[t]he federal courts have consistently held that unsecured creditors do not have standing to challenge the civil forfeiture of their debtors' property" and "a general creditor can never have an interest in specific forfeited property") (internal citations and quotation marks omitted). As a mere unsecured judgment creditor, Roxas would not suffer Article III injury from forfeiture of the Arelma Assets and thus lacks Article III standing to contest enforcement of the Philippine judgment forfeiting these assets.

### B. Roxas Has No Triable Evidence that the Arelma Assets Derive from the Yamashita Treasure

Roxas seeks to overcome this flaw by arguing that the Arelma Assets derive from the Yamashita treasure that Roxas discovered. *See, e.g.,* Dkt. 98-1 at ¶ 8 ("The property which is the subject of this forfeiture proceeding belonged to Roger Roxas who discovered the Yamashita Treasure in January 1971"). As an initial matter, this allegation has no legal significance for standing purposes. If Roxas believed the Arelma Assets derived from the treasure, then Roxas had decades to secure its judgment against the Arelma Assets and thus become more than an unsecured judgment creditor. But Roxas never did so.

In any event, Roxas has no triable evidence that the Arelma Assets derive from the treasure. First, Roxas has no expert forensic or tracing report tracing the Arelma Assets to the treasure. Trying to trace U.S. financial assets back to a physical Philippine treasure from 1971 would (at minimum) require detailed expert tracing evidence. Roxas has none.

4

Even worse for Roxas: the very Hawaii Supreme Court opinion that affirmed Roxas' money judgment renders it affirmatively *im*plausible that the Arelma Assets derive from the treasure. The Arelma Assets stem from a $2 million cash deposit made to Merrill Lynch in 1972 (Sohn Decl., Ex. 1), but the Hawaii opinion states that the vast majority of the treasure was not even excavated by 1972, much less liquidated to cash. *Roxas v. Marcos*, 89 Haw. 91, 104-05 (1998). As Roxas itself previously told a court in this District: "In late 1974, government soldiers began excavating the tunnels that held the treasure that Roxas found." Roxas Rule 56.1 Statement, *District Attorney of New York County v. Republic of Philippines*, No. 1:14-cv-890, Dkt. 386 ("Roxas Rule 56.1 Statement") at ¶ 16.

The only portions of the treasure allegedly excavated by Roxas and stolen by Marcos as of 1972 were 17 small gold bars, some samurai swords, and a golden buddha statute containing diamonds. *Roxas,* 89 Haw. at 102. The buddha statue was still in Marcos' possession as late as 1974 (*id.* at 105; Roxas Rule 56.1 Statement at ¶¶ 24-27), so it could not have been liquidated by 1972 and used to fund the Arelma Assets. The 17 small gold bars had a total value of only $9,305, while the samurai swords were never adjudged to have any value. *Estate of Roxas v. Marcos*, 2001 WL 36284628 (Cir. Ct. Haw. Sept. 6, 2001). Finally, Roxas's own attorneys asked the Hawaii jury to ascribe no value to the diamonds, and the jury agreed. *Roxas*, 89 Haw. at 142-43.

Against all this, Roxas has alluded to three news articles in which Imelda Marcos allegedly said (when she was running for president) that some portion of the Marcos family wealth derived from Yamashita treasure. *See, e.g.,* Robert H. Reid, "Imelda Marcos Says Family Had Japanese Gold, Not Embezzled Funds", Associated Press (Feb. 3, 1992) ("Imelda Marcos claimed Monday that her late husband's fortune was based on Japanese and other gold he found

5

after World War II and not on funds embezzled from the Philippine treasury."). Initially, this characterization in a newspaper article of a purported Imelda Marcos assertion is obvious hearsay for which no hearsay exception applies. Thus, it is inadmissible, as are any similar statements. But even if the reports of Imelda Marcos' statements were admissible, these statements do not say that the *Arelma Assets* derived from the treasure that Roxas purportedly found. As noted above, the Arelma Assets derive from a $2 million cash deposit made in 1972—a time when the vast majority of the treasure had not even been excavated and most of the remainder had definitively not been liquidated to cash.

This timing point easily distinguishes this case from *District Attorney of New York County ("DANY") v. Republic of Philippines*, 307 F.Supp. 3d 171 (S.D.N.Y. 2019), where Judge Failla applied a "relaxed tracing requirement" when considering a constructive trust claim of Roxas and Golden Budha Corporation and held that they raised a genuine issue of fact as to whether certain paintings purchased by the Marcos family were traceable to the treasure. *Id.* at 208-211. The Marcos family purchased the subject paintings in 1975, 1977, and "the late 70's or early 80s". *Id.* at 182-84. This was *after* the Yamashita treasure had been excavated, so Judge Failla found it plausible that the subject paintings derived from the treasure. By contrast, the lion's share of the treasure was not excavated by 1972, when the $2 million that formed the Arelma Assets were deposited at Merrill Lynch. And of the small portion of treasure that *was* excavated by 1972, most of it (*e.g.*, the golden buddha statute) was not liquidated to cash. Thus, even under the relaxed tracing standard allowed by Judge Failla, no reasonable factfinder could conclude that the Arelma Assets trace back to the treasure.[1] This means Roxas would not suffer

---

[1] The Government respectfully submits that Judge Failla's relaxed tracing standard was also flawed on its own terms. First, Judge Failla relied on prior-case deposition testimony that was wildly conclusory. *See id.* at 211. Second, she held that such testimony was admissible because

6

Article III injury from forfeiture of the Arelma Assets, as there is no triable evidence that the Arelma Assets derive from Roxas's treasure.

### C. Roxas Would Not Suffer Article III Injury from Forfeiture of the Arelma Assets Because Roxas Assigned its Treasure Rights to Golden Budha Corporation

Even if Roxas could present triable evidence that the Arelma Assets derived from the treasure, Roxas *still* would not have Article III standing to participate in this case, as Roxas long-ago assigned all its rights to the treasure to Golden Budha Corporation. *Roxas*, 89 Haw. at 107 ("On June 3, 1986, Roxas assigned all of his rights to the Yamashita treasure to GBC [Golden Budha Corporation], which Dacanay had incorporated in Georgia, in exchange for a minority holding of non-voting shares."). This Court has already held that Golden Budha Corporation forfeited its right to participate in this case by not timely seeking to enter the case. Dkt. 98 at 59-61. Yet given the 1986 assignment, only Golden Budha Corporation could possibly suffer Article III injury from any loss of the treasure. Roxas would not.[2]

Seemingly sensitive to this point, Roxas has asserted that it is "also representing the interests of Golden Budha Corporation" in this case. Dkt. 184-13 at 1. But this assertion cannot

---

a counterparty in the *DANY* case (the Duran Class) was in privity with the Marcos family (the counterparty in the prior case where the deposition testimony was generated). *Id.* at 210-11. This privity holding makes little sense. The deposition testimony was generated during the lawsuit between Roxas and the Marcos family for conversion of the treasure. The Marcos family never assigned its treasure rights to the Duran Class, nor did the Duran Class ever win a court judgment wresting away the Marcos family's treasure rights. Thus, the Duran Class is not in privity with the Marcos family regarding ownership of the treasure. In any event, the U.S. Government certainly is not in privity with the Marcos family regarding ownership of the treasure. Thus, the deposition testimony that Roxas used in *DANY* cannot be used against the U.S. Government here.

[2] It makes no difference that Roxas may have acquired shares in Golden Budha Corporation, as "[c]ourts here [in the United States] have consistently held under federal law that a shareholder lacks standing to contest the forfeiture of a corporation's assets." *United States v. All Assets Held in Acct. No. XXXXXXX*, 299 F. Supp. 3d 121, 138 (D.D.C. 2018) (citing cases).

7

overcome the requirement that Roxas must face personal injury-in-fact to have standing. Even when a litigant asserts third-party standing to vindicate a third-party's legal rights, the litigant must have suffered its own injury-in-fact to have Article III standing. *Powers v. Ohio*, 499 U.S. 400, 410-11 (1991) ("We have recognized the right of litigants to bring actions on behalf of third parties, provided three important criteria are satisfied: *The litigant* must have suffered an 'injury in fact' . . .") (emphasis added); *Fenstermaker v. Obama*, 354 F. App'x 452, 454 (2d Cir. 2009) ("To establish third-party standing, Fenstermaker must show that (1) he has suffered an injury in fact . . ."); *Azzawi v. Int'l Ctr. for Disp. Resol.*, No. 16 CIV. 548, 2016 WL 6775437, at *4 (S.D.N.Y. Nov. 14, 2016) ("Magistrate Judge Claire reasoned that Plaintiff lacked standing to sue because he had alleged an injury on behalf of a third party, Al Farez, without demonstrating that (i) '[Plaintiff] personally ha[d] suffered some actual or threatened injury'").

In any event, the doctrine of third-party standing also requires that "there must exist some hindrance to the third party's ability to protect his or her own interests." *Powers*, 499 U.S. at 411. But here, there was no hindrance to Golden Budha Corporation entering this case. As this Court previously held, Golden Budha Corporation simply failed to comply with the statutory procedural requirements and Judge Leon's 2016 Order on Publication and Notice. Dkt. 98 at 59-61; Dkt. 8.[3] For this reason as well, any Roxas claim of third-party standing must fail.

### IV.    Conclusion

For the foregoing reasons, Roxas lacks Article III standing to participate in this case. The United States respectfully requests that the Court grant summary judgment and dismiss Roxas from this action. A proposed order is attached.

---

[3] In denying Golden Budha Corporation's motion for intervention, this Court also found (as an alternative ground for denying intervention) that the company was merely an unsecured creditor. Dkt. 98 at 61-62.

Respectfully submitted,

JAMES CURT BOHLING, ACTING CHIEF
MONEY LAUNDERING AND ASSET
RECOVERY SECTION

*/s/ Joshua L. Sohn*
DANIEL H. CLAMAN
Principal Deputy Chief, International Unit
JOSHUA L. SOHN
Trial Attorney, International Unit
Money Laundering and Asset Recovery Section
Criminal Division
U.S. Department of Justice
1400 New York Avenue, N.W., 10th Floor
Washington, D.C. 20530
Telephone: (202) 514-1263

Attorneys for the United States of America

## CERTIFICATE OF SERVICE

      I hereby certify that on September 9, 2022, I caused the foregoing document to be served, via CM/ECF, to all counsel of record in this action.

                                          By:     */s/ Joshua L. Sohn*
                                                       Joshua L. Sohn