UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
IN RE: ENFORCEMENT OF PHILIPPINE          :
FORFEITURE JUDGMENT AGAINST ALL
ASSETS OF ARELMA, S.A., FORMERLY          :          OPINION AND ORDER
HELD AT MERRILL LYNCH, PIERCE,                       19 Misc. 412 (LAK) (GWG)
FENNER, & SMITH, INC., INCLUDING,         :
BUT NOT LIMITED TO, ACCOUNT
NUMBER 16                                 :
------------------------------------------------------------------X

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

The United States of America (the "Government") filed this action seeking entry of an order registering and enforcing a forfeiture judgment entered by a court of the Republic of Philippines pursuant to 28 U.S.C. §§ 2467(c)(1) & (d)(1). See Application to Register and Enforce a Foreign Forfeiture Judgment, filed June 27, 2016 (Docket # 1) ("Application"). Jeana Roxas, on behalf of the Estate of Roger Roxas ("Roxas") was joined as a respondent, see Order, dated Jan. 15, 2020 (Docket # 96), and now moves for leave to amend her answer.[1] For the reasons that follow, Roxas's motion is granted.

I.     FACTS

On June 26, 2016, the Government filed this action under 28 U.S.C. § 2467 to register a Philippine judgment forfeiting assets held in the name of Arelma, S.A. ("Arelma assets"). Application at 1. On October 24, 2019, Roxas and an entity called "Golden Budha [sic] Corporation" moved to intervene on the basis of a claimed interest in the Arelma assets. See Notice of Motion for Leave to Intervene, filed Oct. 24, 2019 (Docket # 63). As part of the

---

[1] See Notice of Motion for Leave to File First Amended Answer, filed July 29, 2022 (Docket # 184) ("Mot. to Amend"); Supplemental Memorandum of Law in Support of Leave to File First Amended Answer, filed July 29, 2022 (Docket # 184-15) ("Roxas Mem."); Response in Opposition to Motion, filed Aug. 19, 2022 (Docket # 185) ("Opp. Mem."); Reply Memorandum of Law in Support, filed Aug. 29, 2022 (Docket # 186) ("Reply").

motion, Roxas annexed a "Proposed Answer."  See Proposed Answer (annexed as Exhibit 2 to

Docket # 63) ("Ans.").  On January 14, 2020, the Court denied the motion of Golden Budha

Corporation to intervene but concluded that Roxas was properly a respondent in the case and had

been so as of November 18, 2016.  See Order, dated Jan. 15, 2020 (Docket # 96); Transcript of

Initial Conference at 58, filed Jan. 24, 2020 (Docket # 98).

        While the Court granted Roxas's application to be deemed a party to this action when it

ruled that Roxas was a respondent as of November 18, 2016, see id., Roxas did not file the

Proposed Answer anew.  The parties have not found this procedural anomaly to be of any

significance, however.  Nor does the Court.  We thus deem Roxas's Proposed Answer (Docket

# 63-2) to have been properly filed as of January 15, 2020, the date of the Court's ruling deeming

Roxas to be a respondent.

        The Court issued its initial scheduling order in this case on December 2, 2019, which did

not contain any deadline for the amending of any answer.  See Scheduling Order, filed December

2, 2019 (Docket # 83) ("Scheduling Order").  After multiple extensions of the original deadline

for discovery, discovery closed on June 20, 2022.  See Stipulation Extending Case Deadlines,

filed Jan. 18, 2022 (Docket # 155) ("Jan. 18 Extension").  On July 29, 2022, Roxas filed the

instant motion to amend her answer.  See Mot. to Amend.

        Roxas's proposed First Amended Answer adds four affirmative defenses.  See Red-Lined

Version of Roxas Proposed Amended Answer, filed July 29, 2022 (Docket # 184-13) ("Proposed

Am. Ans.").  The First Affirmative Defense asserts that "[t]he Philippine courts lacked personal

jurisdiction over the Arelma Assets [and] Roxas" in relation to the decision the Government

seeks to enforce.  Id. ¶ 26.  The Second Affirmative Defense asserts both that "[t]he Philippine

courts lacked subject matter jurisdiction over the Arelma Assets because the Arelma Assets were not located in the Philippines during the Philippine forfeiture proceedings" and that "[t]he Philippine courts lacked subject matter jurisdiction over the Arelma Assets because the courts failed to conduct a preliminary investigation or make the required underlying determination that the Arelma Assets came from public funds" and "fail[ed] to include [Roxas] as [an] indispensable part[y]." Id. ¶ 27-28.  The Third Affirmative Defense asserts that "[t]he [Philippines] did not take steps, in accordance with the principles of due process, to give notice of the Philippine proceedings to Roxas . . . who had an interest in the property of the proceedings, in sufficient time to enable [Roxas] to defend." Id. ¶ 29.  The Fourth Affirmative Defense asserts that "[t]he judgment of the Republic of the Philippines sought to be [enforced] in this proceeding was obtained by fraud because the Philippine[] courts failed to conduct a preliminary investigation or make the required underlying determination that the Arelma Assets came from public funds." Id. ¶ 30.

The Government opposes leave to amend as to two of Roxas's proposed affirmative defenses.  Opp. Mem. at 1-2.  First, the Government opposes the addition of Roxas's Second Affirmative Defense insofar as it contends that "[t]he Philippine courts lacked subject-matter jurisdiction . . . because [they] failed to conduct a preliminary investigation or make the required underlying determination that the Arelma Assets came from public funds" (the "First Disputed Defense").  Opp. Mem. at 1-2 (quoting Proposed Am. Ans ¶ 28).  Second, the Government opposes the addition of the Fourth Affirmative Defense, which alleges that that the underlying judgment in this case "was obtained by fraud because the Philippine courts failed to conduct a preliminary investigation or make the required underlying determination that the Arelma Assets

came from public funds" (the "Second Disputed Defense").  Id. (quoting Proposed Am. Ans. ¶ 30).

II.    LEGAL STANDARD

Rule 15 provides that courts "should freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a).  Courts "may deny leave to amend for 'good reason,' which normally involves an analysis of . . . undue delay, bad faith, futility of amendment, or undue prejudice to the opposing party."  Fresh Del Monte Produce, Inc. v. Del Monte Foods, Inc., 304 F.R.D. 170, 174 (S.D.N.Y. 2014) (citing McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 200 (2d Cir. 2007); Foman v. Davis, 371 U.S. 178, 182 (1962)).  "The burden to explain a delay is on the party that seeks leave to amend."  MacDraw, Inc. v. CIT Grp. Equip. Fin., Inc., 157 F.3d 956, 962 (2d Cir. 1998).  When a motion "is made after an inordinate delay, no satisfactory explanation is offered for the delay, and the amendment would prejudice [the non-moving party]," the undue delay weighs against granting leave to amend.  Cresswell v. Sullivan & Cromwell, 922 F.2d 60, 72 (2d Cir. 1990).  "Mere delay, however, absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend."  State Teachers Ret. Bd. v. Fluor Corp., 654 F.2d 843, 856 (2d Cir. 1981).  Thus, "the need for new discovery is not sufficient to constitute undue prejudice on its own."  Duling v. Gristede's Operating Corp., 265 F.R.D. 91, 100 (S.D.N.Y. 2010) (collecting cases); accord United States ex rel. Maritime Admin. v. Cont'l Ill. Nat'l Bank & Trust Co., 889 F.2d 1248, 1255 (2d Cir. 1989) ("[T]he adverse party's burden of undertaking discovery, standing alone, does not suffice to warrant denial of a motion to amend a pleading.").

The "non-movant bears the burden of showing prejudice, bad faith[,] and futility of [] amendment."  United States ex rel. Raffington v. Bon Secours Health Sys., Inc., 567 F. Supp. 3d

4

429, 438 (S.D.N.Y. 2021) (citing <u>Grant v. Citibank (S.D.), N.A.</u>, 2010 WL 5187754, at *6 (S.D.N.Y. Dec. 6, 2010)).

III.    <u>DISCUSSION</u>

As an initial matter, we address the Government's argument that the standard for amendments applicable to the modification of scheduling orders, which requires a showing of "good cause," <u>see</u> Fed. R. Civ. P. 16(b)(4), should apply in this case, even though the Court's scheduling order did not contain a deadline for the amendment of an answer.  <u>See</u> Opp. Mem. at 7.  We reject this argument as ungrounded in the text of Rule 16.  <u>See</u>, <u>e.g.</u>, <u>Tolliver v. Lilley</u>, 2016 WL 5793998, at *2 (S.D.N.Y. Sept. 19, 2016) ("Rule 16(b) does not apply here because the scheduling order in this case does not govern amending the complaint in this action.") (citing <u>Kassner v. 2nd Ave. Delicatessen, Inc.</u>, 496 F.3d 229, 243 (2d Cir. 2007); <u>Martin Hilti Family Trust v. Knoedler Gallery, LLC</u>, 2015 WL 9412925, at *3 (S.D.N.Y. Dec. 22, 2015) ("Here, the scheduling order did not set any deadline for amending the pleadings. Accordingly, . . . Rule 16(b) does not apply, and the standards of Rule 15(a) govern the instant motion.").  In any event a court has "discretion to apply the more liberal standard" under Rule 15 instead of the "more exacting standard" laid out in Rule 16, even where a deadline for amending pleadings appears in a scheduling order.  <u>Kiarie v. Dumbstruck, Inc.</u>, 473 F. Supp. 3d 350, 353 (S.D.N.Y. 2020) (citing <u>Del Monte</u>, 304 F.R.D. at 176).  We elect to examine the motion to amend under the Rule 15(a) standard.

A.    <u>Delay</u>

The Government asserts that Roxas engaged in "undue delay" before moving to amend her complaint.  Opp. Mem. at 8-9.  The Government asserts that Roxas "could and should have brought its proposed defenses earlier," because "[t]he defenses are not based on any new facts

that emerged" after Roxas filed her original Answer.  Id.  In the time since the Court allowed

Roxas to intervene in January 2020, the Court extended discovery deadlines nine times,

ultimately extending the initial deadline of June 12, 2020, to the final deadline of June 20, 2022.

See Scheduling Order; Jan. 18 Extension.  Roxas's motion to amend comes more than a month

after the close of discovery, and nearly three years after Roxas filed her original answer.

      Roxas bears the burden of explaining this delay.  MacDraw, Inc. v. CIT Grp. Equip. Fin.,

Inc., 157 F.3d 956, 962 (2d Cir. 1998).  Although "even vague or 'thin' reasons are sufficient" to

excuse delay, Duling v. Gristede's Operating Corp., 265 F.R.D. 91, 98 (S.D.N.Y. 2010) (citing

Town of New Windsor v. Tesa Tuck, Inc., 919 F. Supp. 662, 677 (S.D.N.Y. 1996); Rachman

Bag Co. v. Liberty Mut. Ins. Co., 46 F.3d 230, 235 (2d Cir. 1995)), Roxas provides no

explanation for her decision to amend at this late stage, instead arguing that "there [was] no real

'delay'" because the affirmative defenses sought to be added are derived from factual allegations

included in the original answer.  Roxas Mem. at 12.  Because Roxas offers no explanation as to

why she could or did not amend sooner, we find that the motion to amend comes after an

inordinate and inexcusable delay.

      B.    Undue Prejudice

      "The non-moving party bears the burden 'of demonstrating that substantial prejudice

would result were the proposed amendment to be granted.'"  Agerbrink v. Model Serv. LLC, 155

F. Supp. 3d 448, 454 (S.D.N.Y. 2016) (quoting Oneida Indian Nation of New York State v. Cty.

of Oneida, N.Y., 199 F.R.D. 61, 77 (N.D.N.Y. 2000)).  Here, the Government argues that it

would be "substantially prejudiced" by the proposed amendments to Roxas's complaint.  Opp.

Mem. at 9.  "Although 'prejudice to the opposing party is an important consideration, only undue

prejudice justifies denial of leave to amend.'"  Securitas Elec. Sec., Inc. v. DeBon, 2022 WL

484943, at *2 (S.D.N.Y. Feb. 17, 2022) (emphasis in original) (quoting Christians of Cal., Inc. v. Clive Christian N.Y., LLP, 2014 WL 3605526, at *5 (S.D.N.Y. July 18, 2014)).

"In gauging prejudice," the Court considers, "among other factors, whether an amendment would 'require the opponent to expend significant additional resources to conduct discovery and prepare for trial' or 'significantly delay the resolution of the dispute.'" Ruotolo v. City of New York, 514 F.3d 184, 192 (2d Cir. 2008) (quoting Block v. First Blood Assocs., 988 F.2d 344, 350 (2d Cir. 1993)).  Delay alone is insufficient to deny leave to amend, however.  See State Teachers Ret. Bd. v. Fluor Corp., 654 F.2d 843, 856 (2d Cir. 1981).  The Government must demonstrate that it was unduly prejudiced by the delay.  Agerbrink, 155 F. Supp. 3d at 454. Here, the Government asserts that allowing Roxas to amend would cause undue prejudice because the Government would have to "reopen fact and expert discovery to address Roxas['s] new defenses."  Opp. Mem. at 9.

While "[n]ormally, mere allegations that an amendment 'will require the expenditure of additional time, effort, or money do not themselves constitute undue prejudice,'" Raffington, 567 F. Supp. 3d at 438 (quoting Christians of Cal., 2014 WL 3605526, at *5), "the likelihood of undue prejudice increases when discovery is nearly or already complete . . . or the cost of additional discovery would be significant."  Secs. Exch. Comm'n v. Rio Tinto PLC, 2020 WL 2504008, at *7 (S.D.N.Y. Mar. 9, 2020).  "Central to the undue prejudice analysis," however, "is the extent to which the new claims arise from existing ones and whether the non-movant had prior notice of the new claims."  Pettiford v. City of Yonkers, 2021 WL 2556172, at *2 (S.D.N.Y. June 21, 2021).  Where new allegations of "breadth and gravity" are first presented in a proposed amendment, this may cause undue prejudice to the non-moving party.  Kowa Co., Ltd. v. Sawai USA, Inc., 2016 WL 3681459, at *3-4 (S.D.N.Y. July 5, 2016) (new allegations,

7

filed "a year after the amendment deadline, and after the close of protracted and repeatedly extended fact discovery" created undue prejudice); accord Rio Tinto PLC, 2020 WL 2504008, at *6, 14 (undue prejudice where the addition of "factual detail" to a pleading would require new discovery, which would result in an "exceptionally expensive" cost and a "significant period" of delay). Courts in this Circuit hesitate to find undue prejudice, however, where amendments "do not raise factual claims unrelated to the events in [the] original [pleading]." A.V. by Versace, Inc. v. Gianni Versace S.p.A., 87 F. Supp. 2d 281, 299 (S.D.N.Y. 2000); accord Monahan v. N.Y.C. Dep't of Corr., 214 F.3d 275, 284 (2d Cir. 2000) (courts will allow delayed amendment where the party "had knowledge of the facts giving rise to the defense"); Konig v. TransUnion, LLC, 2020 WL 550285, at *4 (S.D.N.Y. Feb. 4, 2020) (granting leave to amend where additional discovery was required but new claims arose from the same "transaction" as claims included in the original complaint).

Here, Roxas argues that her new affirmative defenses are based solely on facts already included in the original Answer and referenced in prior communications with the Government. Roxas Reply at 5-7 ("Roxas repeatedly put the Government on notice of these defenses . . . throughout these proceedings."). Thus, she argues that the addition of these defenses does not require new discovery at all. Id. at 10-11.

We address the two disputed defenses separately.

1.    First Disputed Defense

The First Disputed Defense alleges that:

[t]he Philippine courts lacked subject matter jurisdiction over the Arelma Assets because the courts failed to conduct a preliminary investigation or make the required underlying determination that the Arelma Assets came from public funds, in violation of 28 U.S.C. [§] 2467(d)(1)(C). Nothing as of yet has been publicly issued from the Philippine courts by way of a definitive judgment of findings of fact pertaining to the sources of the Arelma Assets. Moreover,

> nowhere in the actual text and drafting history of Republic Act No. 1379 and
> related Philippine law through Executive Orders issued after the termination of
> the Marcos dictatorship regime, is it contemplated that 'ill-gotten wealth' pertains
> to property or wealth accumulated by the public servant or government employee
> through extortion, extraction from, or any form of coercion against private
> citizens.  Republic Act No. 1379 could not have relinquished or extinguished
> Roxas or Golden Budha Corporation's vested rights in the Yamashita Treasure
> [sic].  Thus, Roxas and Golden Budha Corporation had a legitimate jurisdictional
> objection to make in this regard but they were not afforded an opportunity to do
> so due to the Republic's failure to include them as indispensable parties.

Proposed Am. Ans. ¶ 28.

The original answer, by contrast, stated that "[t]he April 2009 judgment . . . sought to be enforced by [the Government] in this proceeding never determined that the Arelma assets were stolen or originally assets of the Republic [of the Philippines]. . . . To the contrary, the [Philippine] court determined that the Arelma assets were 'ill[-]gotten wealth' that should be forfeited to the Republic."  Ans. ¶ 29-30.  Thus, the original answer made no reference to "subject matter jurisdiction."

The reference to "subject matter jurisdiction" ties in to one of the defenses listed in 28 U.S.C. § 2467, which bars a court from enforcing a foreign judgment where "the foreign court lacked jurisdiction over the subject matter."  28 U.S.C. § 2467(d)(1)(C).  The Government states that to address this defense, it will be required to obtain a new report from its experts on Philippine law because it was not aware of the potential defense until the last day of expert discovery.  Opp. Mem. at 6.  The Government notes that "the only jurisdictional defense that the Government had an opportunity to rebut in its rebuttal expert reports" was "that the [Philippine courts] lacked jurisdiction because the Arelma Assets were located outside the Philippines."  Opp. Mem. at 6.  Although the factual basis of the newly-proposed defense — that the Philippine proceedings "never determined that the Arelma assets were stolen or originally assets of the Republic" — was provided in the original answer, see Ans. ¶ 30, the Government argues that it

was not put on notice of any legal argument regarding "subject matter jurisdiction" at any time before the deposition of Roxas's expert on June 20, 2022.  Opp. Mem. at 6.

Roxas points to a string of instances at which she contends she "alerted the Government that she was asserting" this defense.  Reply at 6-7.  First, Roxas points to assertions in a filing dated November 2016 that "[t]he Philippines did not have jurisdiction over the property"; "[t]he Philippine Government has no proof that the Property was stolen from the government of the Philippines"; and "[t]he property which is the subject of this forfeiture proceeding belonged to Roger Roxas."  See Reply at 6; Notice of Opposition to Enforcement of Philippine Judgment, annexed as Exhibit A to Letter from Daniel J. Brown (Docket # 92-1) ("2016 Opp. Not."), ¶¶ 6-8.  But nothing in these statements suggest that these contentions amounted to a defense of lack of "subject matter jurisdiction."

In response to an interrogatory regarding the reference to "jurisdiction over the property," Roxas stated that:

> the Arelma Assets have, at all relevant times, been held in the United States, not the Philippines.  Upon information and belief, the Arelma Assets are now in the custody of the Supreme Court of New York, County of New York since 2010 to the present.  Prior to 2010, the Arelma Assets were held by the United States District Court of Hawaii and Merrill Lynch in New York, respectively.  As such, the Philippines never asserted jurisdiction with respect to the Arelma Assets.

Interrogatory Responses, annexed as Exhibit D to Mot. to Amend (Docket # 184-4), at 6.

Again, while this response uses the word "jurisdiction," it does not forecast a defense that "[t]he Philippine courts lacked subject matter jurisdiction over the Arelma Assets because the courts failed to conduct a preliminary investigation or make the required underlying determination that the Arelma Assets came from public funds."  Proposed Am. Ans. ¶ 28. Instead, it resembles the uncontested proposed defense that "[t]he Philippine courts lacked

subject matter jurisdiction over the Arelma Assets because the Arelma Assets were not located in the [Philippines] during the [Philippine] forfeiture proceedings."  Id. ¶ 27.

Roxas also points to a statement in its Motion for Leave to Intervene, which is nearly identical, alleging that "[t]he Philippines did not have jurisdiction over the property"; "[t]he Philippine Government has no proof that the Property was stolen from the government of the Philippines"; and "[t]he property which is the subject of this forfeiture proceeding belongs to the Golden Bud[h]a Corporation."  Motion for Leave to Intervene as of Right, filed Oct. 20, 2017 (Docket # 17) ("2017 Mot."), ¶ 5.  For the same reasons, these statements did not serve to alert the Government that the subject matter jurisdiction defense was in play.

Roxas also directs the Court to its briefing in support of the motion to intervene, where it stated that "Intervenors intend to establish that they should have exclusive title to the Arelma assets insofar as . . . [they were] never the lawful property of the Republic of the Philippines" and argued that "the April 2009 judgment of the Republic of the Philippines sought to be enforced by the United States Department of Justice in this proceeding never determined that the Arelma assets were stolen or originally assets of the Republic."  Memorandum of Law in Support of Motion to Intervene, filed Oct. 25, 2017 (Docket # 64), at 9 n.8, 10.  Although this statement again lays out the factual basis of the defense, it nowhere suggests an issue relating to the Philippine court's "subject matter jurisdiction."  Roxas points to three other instances where she contends notice was provided.  See Reply at 6-7.  But these statements address only the factual premise of the defense and do not suggest any problem with "subject matter jurisdiction"

Having considered these and other statements cited by Roxas, Reply Br. at 7-8, we find that the Government did not have notice that Roxas was raising an issue of "subject matter jurisdiction" until the deposition of Roxas's expert on June 20, 2022.  See Desierto Dep.,

annexed as Exhibit E to Mot. to Amend (Docket # 184-6), at 63-64.   On the other hand, the record demonstrates that the Government was given ample notice through pleadings and otherwise of the factual basis for the defense: namely, that "the [Philippine] courts failed to conduct a preliminary investigation or make the required underlying determination that the Arelma Assets came from public funds."  E.g., Proposed Am. Ans. ¶ 28.  We must therefore consider whether introduction of this newly introduced legal theory is likely to create undue prejudice to the Government.

Although Roxas did not provide notice of the First Disputed Defense, we do not believe the Government will be unduly prejudiced by its inclusion.  This defense "do[es] not raise factual claims unrelated to the events in [the] original [pleading]."  A.V. by Versace, 87 F. Supp. 2d at 299.  Instead, it is based on the factual predicate that the Philippine government failed to make necessary determinations, as alleged in the original answer.  See Ans. ¶ 30 (The Philippine court "never determined that the Arelma assets were stolen or originally assets of the Republic.").

While the Government has alleged that it would be prejudiced by the amendment and that it would require "significant discovery," Opp. Mem. at 6, it points only to the fact that it would have to obtain an additional opinion from one of the experts on this case.  Id.  It makes no argument that the inclusion of the defense would require additional fact discovery.  Whatever burden is on the Government in obtaining this opinion can be mitigated by our ruling that the Government need only produce a supplemental expert report and that no additional discovery (such as a deposition of the Government's expert) would be permitted.

The Government cites Vaeso, Inc. v. High Peak Software, Inc., 2022 WL 2392359, at *2 (S.D.N.Y. July 1, 2022)), for the proposition that undue prejudice exists when discovery must be reopened at a late stage in proceedings.  See Opp. Mem. at 9.  Vaeso is distinguishable most

12

obviously because in <u>Vaeso</u> the amending party required an unspecified amount of additional discovery, which the court determined would "hamstring the timely resolution of the case." 2022 WL 2392359 at *2.  Here, the addition of an expert report would result in only minimal disruption.

In the end, we find that the Government has not met its burden of demonstrating that it would be unduly prejudiced by Roxas's amendment to include the subject matter jurisdiction defense.  <u>See</u> <u>Christians of Cal., Inc. v. Clive Christian N.Y., LLP</u>, 2014 WL 3605526, at *6 (S.D.N.Y. July 18, 2014) (finding that amendment was prejudicial, but not unduly so, where non-movant "demonstrated that granting the amendment [might have required] some additional expenditures of time and money to reopen discovery, and [might have resulted] in some delay of the scheduled trial dates" but failed to show "that these burdens would be significant or could not be ameliorated").

Accordingly, Roxas's motion to amend is granted with respect to the First Disputed Defense.

### 2.   Second Disputed Defense

In the Second Disputed Defense, Roxas invokes § 2467's defense to the enforcement of foreign judgments where "the judgment was obtained by fraud."  <u>See</u> 28 U.S.C. § 2467(d)(1)(E). The Second Disputed Defense states that the Philippine judgment "was obtained by fraud because the Philippine[] courts failed to conduct a preliminary investigation or make the required underlying determination that the Arelma Assets came from public funds."  Proposed Am. Ans. ¶ 30.  In other words, the Second Disputed Defense invokes the same factual predicate as the First Disputed Defense.  The original answer stated that "[t]he April 2009 judgment . . . sought to be enforced by [the Government] in this proceeding never determined that the Arelma assets

were stolen or originally assets of the Republic [of the Philippines]. . . . To the contrary, the [Philippine] court determined that the Arelma assets were 'ill[-]gotten wealth' that should be forfeited to the Republic."  Ans. ¶ 29-30.

As with the First Disputed Defense, Roxas argues that she "alerted the Government that she was asserting" the fraud defense in this case.  Reply at 6.  She directs the court to multiple instances in which she alleged that "[t]he Philippine trial was a sham," including as early as 2016.  See 2016 Opp. Not. ¶ 5; 2017 Mot. ¶ 5(f).  Roxas contends that a litigant need not "literally use the word 'fraud' to put [the Government] on notice of a potential fraud defense" because "'fraud' and 'sham' are synonyms."  Reply at 8.

We need not address the question of whether the Government was specifically put on notice that Roxas was invoking the "fraud" defense because, for the reasons just stated, we find no undue prejudice to the Government to the extent they believe that any additional expert report is required.  As was true previously, the Court would limit any further expert discovery to the production of the Government's supplemental expert report.

As to this defense, however, the Government argues that it will be prejudiced because this defense will require not only a new expert report but also fact discovery.  Opp. Mem. at 7. The Government's argument that fact discovery is needed rests on its contention that for Roxas to prove the defense that the Philippine judgment was "obtained by fraud," 28 U.S.C. § 2467(d)(1)(E), it will require discovery "into the intent and mens rea" of the Philippine court on the ground that "'fraud' is a wrong that must be done intentionally."  Opp. Mem. at 7.

Roxas's response to this argument is that

whatever reasoning the [Philippine court] used in failing to make the preliminary determination that the Arelma assets were from public funds is not relevant. What matters is whether, under Philippine law, it was required to make such a determination, and whether it did so.

14

Reply Mem. at 11-12.  In asserting that no discovery into "mens rea" or "intent" is required, Roxas emphasizes that this Court must not "revisit the merits of the foreign judgment" and that all that matters is whether the judgment was "procedurally unfair."  Id. (quoting In re Enforcement of Philippine Forfeiture Judgment, 442 F. Supp. 3d 756, 762 (S.D.N.Y. 2020)).  In Roxas's view "[a] foreign judgment is procedurally unfair if it was 'obtained by fraud.'"  Id. (quoting 28 U.S.C. § 2467(d)(1)(E)).

To be sure, if we believed that the Government required factual discovery on the "intent" or "mens rea" of the Philippine court, we would not permit the amendment at this late stage.  See Kowa Co. Ltd., 2016 WL 3681459, at *4 (denying leave to amend where there were new allegations "premised on decades-old conduct" and where "permitting amendment would cause [plaintiff] to incur significant additional expenses[,] and cause further delays in this already drawn-out litigation"); see also Am. Precision Indus., Inc. v. F. Ins. Co., 2020 WL 13441810, at *6 (W.D.N.Y. Apr. 29, 2020) ("To allow [plaintiff] to amend its complaint would be unduly prejudicial as it would require each [d]efendant . . . to delve much more deeply into decades-old transactions[.]").

However, we see no need for any factual discovery as to the Second Disputed Amendment in light of Roxas's concession.  Roxas's description of the facts relevant to the fraud defense – combined with the statement in its reply brief --- operate as a concession that any evidence of fraudulent intent or mens rea on the part of the Philippine court is irrelevant to her claim of fraud.  Thus, if the Government prevails on its view that the fraud defense in fact requires proof of intent or mens rea, Roxas's fraud defense will be defeated because Roxas will be precluded from offering any evidence of the Philippine court's intent or mens rea.

Put another way, Roxas will be limited beginning now and going forward to arguing that the only factual predicate underlying its claim under the "obtained by fraud" clause of section 2467 is its allegation that the Philippine Court "failed to conduct a preliminary investigation or make the required underlying determination that the Arelma Assets came from public funds." Proposed Am. Ans. ¶ 30.  If this factual predicate (if proven to be true) is insufficient as a matter of law to support a fraud defense, Roxas's invocation of the fraud defense will fail.

With the above limitations in place, the Court sees no prejudice in allowing the proposed amendment given that no additional factual discovery will be required.  Also, now that the "fraud" clause has been limited to only the "procedural" failures alleged in the Amended Answer, we find that the Government was put on notice of the defense in light of Roxas's past assertions that the Philippine proceedings were a "sham."  Reply at 5-7.  The word "sham" was sufficient to give the Government notice of this limited fraud defense inasmuch as the common understanding of the term "sham" encompasses a failure to observe required process.  See Bartolini v. Cassels, 801 F. App'x 10, 12 (2d Cir. 2020) (plaintiff claimed a due process violation because alleged proceedings were a "sham"); see also Levenstein v. Salafsky, 164 F.3d 345, 350 (7th Cir. 1998) (alleging that "the procedures used . . . were a blatant sham — the equivalent of no procedures at all"); Belanger v. Blum, 2010 WL 1286857, at *4 (D. Conn. Mar. 30, 2010) (an alleged "sham proceeding" was one in which the plaintiff claimed a due process violation).  Nonetheless, to the extent the Government wishes to have its expert opine on whether the judgment was "obtained by fraud" — grounded exclusively on the alleged failure to investigate or make the underlying determination as to the source of the funds — the Government will be free to do so by means of a supplemental expert report.

V.     <u>CONCLUSION</u>

For the foregoing reasons, Roxas's motion to amend (Docket # 184) is granted.  The proposed amended answer shall be filed forthwith.  The parties shall confer and file a letter within 5 business days of this decision setting forth a proposal for the deadline of the service of any supplemental expert report sought by the Government.  The letter shall also explain whether the potential production of such a report may affect any of the summary judgment briefing now underway.

Dated:  November 15, 2022
         New York, New York

_____
GABRIEL W. GORENSTEIN
United States Magistrate Judge

17